[Nos. C040840, C042384. Third Dist. June 14, 2004.]

SANDRA L. BANNING, Plaintiff and Respondent, v.
MICHAEL A. NEWDOW, Defendant and Appellant.

440

## COUNSEL

Michael A. Newdow, in pro. per., for Defendant and Appellant.

Law Offices of Jay-Allen Eisen, Jay-Allen Eisen, C. Athena Roussos; Law Offices of Dianne M. Fetzer, Dianne M. Fetzer and Darren M. Bevan for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In consolidated appeals Nos. C040840 and C042384 in this ongoing child custody proceeding, Michael A. Newdow (father), in propria persona,[1] appeals from trial court orders requiring him to pay a portion of the attorney's fees of the child's mother, Sandra L. Banning (mother), pursuant to Family Code section 7640.[2] Father contends section

[1] Newdow was admitted to the California State Bar in July 2002.

[2] Undesignated statutory references are to the Family Code.

Section 7640 provides: "The court may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pretrial proceedings, including blood tests, to be paid by the parties, excluding any governmental entity, in proportions and at times determined by the court."

7640 (a part of the Uniform Parentage Act) is unconstitutional on its face and as applied. We shall conclude the statute is constitutional on its face, and father has waived his "as applied" challenge by failing to present a factual analysis supported by citation to the record.

Father also seeks review of other orders, but they are nonappealable interim orders.

Pursuant to an order to show cause issued by this court, directing father to show cause why sanctions should not be imposed against him for filing in this court a confidential child custody evaluation report, we shall deny mother's request for sanctions which is unsupported in this appeal by any citation to legal authority.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, mother and father, who never married, had a baby girl. Mother and father had no formal custody arrangement, and mother was the primary caregiver.

In 1999, mother and father ended their relationship, and mother initiated custody proceedings. The trial court ordered joint legal custody, with mother having sole physical custody.

In April 2001, father moved to modify the parenting plan, arguing he is entitled to a "50-50" joint physical custody arrangement. That matter is still pending in the trial court.

During the course of these proceedings, the trial court has made various orders for father to pay a portion of mother's attorney's fees.

On April 4, 2002, father filed a notice of appeal (case No. C040840) from trial court orders dated February 6 and March 13, 2002. The record on appeal contains only minute orders for those dates. The February 6, 2002, minute order bore illegible handwritten notes. Father indicates the order of February 6, 2002, directed the transmission to mother's attorney of $4,756.25 (of a

---

[3] We deny father's July 30, 2003, motion to append the record with a one-page letter from mother's attorney relative to her motion for sanctions.

$6,500 "advance[]" he previously deposited pursuant to a July 9, 2001, court order which is not the subject of this appeal).[4]

The March 13, 2002, minute order stated the court ordered father to pay $500 in attorney's fees to mother.

On October 9, 2002, father filed a second notice of appeal (case No. C042384) purporting to appeal from orders entered by the trial court on four dates in 2002—August 21, August 22, September 17, and September 25. The minute orders from those dates bore some illegible handwritten notations. It appears father is challenging orders requiring him to pay mother's attorney's fees, as follows: (1) An August 22, 2002, order in the amount of $24,000; and (2) a September 25, 2002, order in the amount of $12,000. However, the September 25, 2002, minute order called for preparation of a formal order, which apparently was not done. Consequently, there is no appealable order for September 25, 2002, as we conclude *post*.

Father is also challenging the trial court's determination that father must remove the child as an unnamed plaintiff in a federal lawsuit filed by plaintiff to challenge the Pledge of Allegiance as violative of the establishment clause. We shall explain father fails to show an appealable order. Other orders challenged by father are also nonappealable interim orders.

We consolidated the two appeals, Nos. C040840 and C042384.

## DISCUSSION

I. *Attorney's Fees*

A. *Standard of Review and Appealability*

■ The orders directing father to pay mother's attorney's fees are appealable orders. (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 [49 Cal.Rptr.2d 339].)

■ Father presents questions of law, which are subject to de novo review. (*Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1405 [129 Cal.Rptr.2d 904].)

B. *Father's Appeals of the Attorney's Fees Orders are not Barred*

We first consider—and reject—mother's argument that father is barred from challenging the constitutionality of the attorney's fee awards by his

---

[4] There is no court order in the record for July 9, 2001, just a minute order which directs mother's counsel to prepare a formal order.

failure to appeal from three prior awards of attorney's fees in this case (entered on or before July 21, 1999, in amounts of $4,000, $6,500, and $900), which are now final. Mother's argument is not well taken.

She cites case law for the proposition that final orders are conclusive and bar further litigation of all factual or legal issues that were litigated or might have been litigated, including constitutionality of statutes giving the court jurisdiction to award attorney's fees. (*Chicot Co. Drainage Dist. v. Baxter State Bank* (1940) 308 U.S. 371 [84 L.Ed. 329, 60 S.Ct. 317] (*Chicot*); *Rescue Army v. Municipal Court* (1946) 28 Cal.2d 460, 463 [171 P.2d 8] (*Rescue Army*); *In re Marriage of Mason* (1996) 46 Cal.App.4th 1025, 1028 [54 Cal.Rptr.2d 263] (*Mason*); *Peery v. Superior Court* (1985) 174 Cal.App.3d 1085, 1095 [219 Cal.Rptr. 882] (*Peery*); *Bank of America v. Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 585 [54 Cal.Rptr. 899] (*Bank of America*).)

The principle described by mother (barring claims that "might have been" litigated) is res judicata, pursuant to which a former judgment operates as a bar against a second action *upon the same cause*. (*Bank of America, supra*, 246 Cal.App.2d 578, 582.) We do not have to decide whether any of the prior orders constitute a judgment for purposes of res judicata because here there is no "same cause." Father is not attempting to relitigate prior fee awards that have become final. Rather, father is challenging new fee awards. Each award of attorney's fees is separate.

Mother fails to discuss any of the cases she cites. None assists her case. The cited cases are distinguishable, e.g., they involved attempts to reopen matters already decided and final, whereas here father is challenging new orders awarding new amounts of attorney's fees. Thus, *Chicot, supra*, 308 U.S. 371, held that bondholders who, as parties in a bankruptcy proceeding for readjustment of a drainage district's debts, had full opportunity to object to the constitutionality of the statute providing for such readjustments, were bound by the decree in that proceeding and could not afterwards seek to recover on their bonds upon the ground that the decree was rendered void by a subsequent court order in a subsequent case declaring the statute unconstitutional.

*Rescue Army, supra*, 28 Cal.2d 460, allowed a party to pursue a writ of prohibition to try to restrain a third trial for violation of an allegedly unconstitutional ordinance regulating solicitation of charitable contributions (though the Supreme Court ultimately concluded the ordinance was constitutional).

*Mason, supra*, 46 Cal.App.4th 1025, held the trial court's denial of a husband's motion to set aside a stipulated judgment dividing community

property was res judicata and barred a subsequent order to show cause by the husband seeking to invoke the trial court's continuing jurisdiction over omitted community assets. (*Id.* at pp. 1027–1028.) Res judicata barred the husband from resurrecting a fraud claim based on a new theory that business goodwill was an omitted asset. He could not withhold issues and litigate them in consecutive actions. (*Ibid.*)

*Peery, supra,* 174 Cal.App.3d 1085, denied a husband's petition for a peremptory writ of mandate to compel a trial court to relinquish jurisdiction and enforce a Louisiana custody decree that conflicted with an earlier California custody decree. There were no circumstances which would permit the husband to attack the California judgment collaterally on the basis of lack of subject matter jurisdiction, so as to render the Louisiana decree res judicata.

*Bank of America, supra,* 246 Cal.App.2d 578, held a decree of final distribution approving an executor's settlement of an estate with the Department of Mental Hygiene was res judicata in a later action by the executor to recover the money, where, though the statute was held unconstitutional in an unrelated case shortly before this decree was entered, no appeal was taken.

Mother fails to show how any of these cases apply here to bar father from challenging the new awards of attorney's fees.

### C. *Section 7640 is Constitutional*

Father contends section 7640 is unconstitutional on its face because it forces him to pay his adversary's attorney's fees irrespective of the merits of his case and even if he prevails, solely because he has more money than mother.

We shall conclude section 7640 is constitutional because, even if it implicates fundamental rights, it serves a compelling state interest of promoting the best interests of the child.

We shall also reject father's contention that the statute was unconstitutionally applied in this case.

### 1. *Facial Challenge*

In considering a facial constitutional challenge to a statute, we uphold the statute unless its unconstitutionality plainly and unmistakably appears; all presumptions favor its validity. (*City of Los Angeles v. Superior Court* (2002)

29 Cal.4th 1, 10–11 [124 Cal.Rptr.2d 202, 52 P.3d 129]; *Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 253–255 [158 Cal.Rptr. 330, 599 P.2d 636].)

It has been said that a facial challenge can succeed only if the statute inevitably poses a present total and fatal conflict with applicable constitutional prohibitions. (*People v. Gallegos* (1997) 54 Cal.App.4th 252, 262 [62 Cal.Rptr.2d 666].) However, in *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307 [66 Cal.Rptr.2d 210, 940 P.2d 797], which held invalid a statute requiring a pregnant minor to secure parental consent or judicial authorization for an abortion, the California Supreme Court said: "A statute that imposes substantial burdens on fundamental privacy rights with regard to a large class of persons may not be sustained against a facial constitutional attack simply because there may be a small subclass of persons covered by the statute as to whom a similar but much more narrowly drawn statute constitutionally could be applied. Thus . . . a facial challenge to a statutory provision that broadly impinges upon fundamental constitutional rights may not be defeated simply by showing that there may be some circumstances in which the statute constitutionally could be applied, when . . . there is nothing in the language or legislative history of the provision that would afford a reasonable basis for severing the asserted constitutionally permissible applications of the statute from the provision's unconstitutional applications." (*American Academy of Pediatrics v. Lungren, supra*, 16 Cal.4th 307, 343.)

We shall conclude that, even under the standard announced in *American Academy of Pediatrics v. Lungren, supra*, 16 Cal.4th 307, section 7640 is constitutional on its face.

Here, section 7640 is part of the Uniform Parentage Act (§ 7600 et seq.), and its application is limited to cases involving matters of parenting and child custody. The statute does not apply to marital dissolution or any other matter unrelated to children. Section 7640 requires the trial court to determine what amount of fees is "reasonable," (see fn. 2, *ante*) and section 270 requires the court to determine that the party being ordered to pay "has or is reasonably likely to have the ability to pay."

By fathering a child, father has assumed responsibilities for that child even where those responsibilities may conflict with father's own needs or desires. (*American Academy of Pediatrics v. Lungren, supra*, 16 Cal.4th 307, 335 ["parents during a child's minority have the legal right (and obligation) to act on behalf of their child to protect their child's rights and interests"]; *ibid.* [child's fundamental interests may diverge from parent's interests].)

The principle of the best interests of the child is the sine qua non of the family law process governing custody disputes. "Although a parent's interest

in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826] [rejecting mother's contention that due process was violated to the extent that dependency statutes restricted juvenile court's dispositional options in dependency proceeding].) "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' " (*New York v. Ferber* (1982) 458 U.S. 747, 756–757 [73 L.Ed.2d 1113, 102 S.Ct. 3348].)

The importance of the policy protecting the children's welfare was expressed in a different context in *In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277 [266 Cal.Rptr. 548], which held that, in child custody proceedings, the father could not enforce against the mother a provision of a marital settlement agreement waiving any right to attorney's fees. "[P]arties to a divorce cannot abridge the court's ability to act on behalf of the children, either by direct attempts to terminate the court's power, or by attempts to deny attorney's fees where needed to institute or defend against actions for modification of child custody or support orders. (*In re Marriage of Coleman* (1972) 26 Cal.App.3d 56, 60 [102 Cal.Rptr. 629] ['If the wife is unable to afford counsel fees, it is also consistent with the interest of the children that she be awarded counsel fees in order to represent the children's interests']; . . . *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 451 [235 Cal.Rptr. 458] [rights of contracting parties 'must yield to the welfare of the children'].)" (*Id.* at pp. 1284–1285.) The parties could by contract waive attorney's fees in disputes unrelated to the children's welfare (e.g., spousal support), but could not do so in matters affecting the children's welfare. (*Ibid.*)

Father asserts section 7640 violates the following constitutional rights: (1) the right of parenthood; (2) freedom of association; (3) freedom of speech; (4) the right to petition government for redress of grievances; (5) the rights against self-incrimination, cruel and unusual punishment, and excessive fines; and (6) the right to be protected against unconstitutional takings.

■ Even assuming these matters have been preserved for appeal (a point disputed by mother), some of the asserted rights are not shown to have any bearing on the question of the constitutionality of section 7640. Thus, father's argument about the right of association relates to the nonappealable interim custody orders. Orders to pay an opposing party's attorney's fees do not constitute interference with free speech or compelled subsidization of an opponent's speech. (*Board of Regents v. Southworth* (2000) 529 U.S. 217,

229 [146 L.Ed.2d 193, 205, 120 S.Ct. 1346] [government may compel payment of money through taxes and other forms of compulsion and use the funds to pursue programs that are contrary to the beliefs of the payors without violating First Amendment; held public university could charge students mandatory fee to fund extracurricular student speech where there was viewpoint neutrality in allocation of funding to student groups]; *Miller v. California Com. on Status of Women* (1984) 151 Cal.App.3d 693, 701 [198 Cal.Rptr. 877] [rejected taxpayer challenge to pro-ERA activities of Commission on the Status of Women because First Amendment was not infringed by government's use of citizen's taxes to propagate messages that the citizen considered odious].) The cases cited by father are distinguishable, because they involved compelled assessments, the only purpose of which was to support the offensive speech. (*United States v. United Foods, Inc.* (2001) 533 U.S. 405 [150 L.Ed.2d 438, 121 S.Ct. 2334] [compelling mushroom producers to subsidize a mushroom advertising program with which they disagreed violated First Amendment]; *Pacific Gas & Elec. Co. v. California P.U.C.* (1986) 475 U.S. 1 [89 L.Ed.2d 1, 106 S.Ct. 903] [California could not compel PG&E to mail customers, in PG&E envelopes, messages from a public interest group that opposed PG&E practices].) Here, the purpose of the fee award is to ensure that a child's best interests are represented. We reject father's argument that rights afforded in criminal proceedings (the rights against self-incrimination, excess fines, and cruel and unusual punishment) should apply here because removing a child from a parent is a penalty greater than a criminal penalty. Moreover, this contention relates to the interim custody order, which, as we shall explain, is nonappealable, and not to the attorney's fees awards that are the subject of this appeal.

Despite the overreaching of father's position, we shall assume for purposes of this appeal that section 7640 imposes significant encroachment upon fundamental constitutional rights. Father acknowledges such infringement may be permissible if the law is narrowly tailored and justified by a compelling state interest. (*Bates v. Little Rock* (1960) 361 U.S. 516, 524 [4 L.Ed.2d 480, 486, 80 S.Ct. 412].) We shall conclude section 7640 is justified by the compelling state interest in promoting the best interests of children involved in custody proceedings.[5] Thus, our system of justice depends on the presentation of evidence by opposing sides, recognizing that, most often, one side will not have exclusive possession of the truth. The requirement that father pay attorney's fees, even where he prevails on a legal issue, is necessary to insure that the welfare of the child he fathered is protected by a presentation of all evidence bearing on the various issues that arise in a custody dispute. The employment of an attorney is essential to

---

[5] We reject mother's argument that, since father himself invoked the "best interests of the child" principle in the custody dispute, he is estopped from asserting that the "best interests of the child" standard is unconstitutional as a justification for a section 7640 fee award.

allow laypersons, like mother, to present evidence bearing on the best interests of the child. This is a compelling state interest.

As indicated, section 7640 says the trial court may order *reasonable* attorney's fees to be paid by the parties in proportions determined by the court.

Father claims the statute violates the due process guarantee of the Fourteenth Amendment, which requires a state to treat individuals with "fundamental fairness" when its actions infringe on their protected liberty or property interests. Father also claims section 7640 violates equal protection. Father attempts to bolster his claims of unconstitutionality by ignoring the fact that there are constraints on the trial court in awarding attorney's fees. Thus, he argues mother's attorney can "run[] up her charges in revenge," and due process is violated because section 7640 gives the trial court "unbridled discretion."

 However, as indicated, section 7640 requires the trial court to determine what amount of fees is "reasonable." This would exclude attorney's fees incurred for the purpose of revenge. Additionally, section 270 provides: "If a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay." In his reply brief, father argues the "reasonable" standard is too vague to defeat his argument about unbridled discretion. Yet father's opening brief, under the heading "Unbridled Discretion," did not even acknowledge the statute imposed a standard of reasonableness. We may disregard arguments made for the first time in a reply brief. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) Moreover, we consider a "reasonableness" standard sufficiently specific to meet constitutional requirements.

 Father claims section 7640 violates the public policy against protracted litigation by giving financial incentive to prolong litigation. We disagree. Fees incurred simply to prolong litigation would not be "reasonable" and would be excluded by section 7640. Additionally, section 271 allows the court to impose an order to pay attorney's fees as a sanction on a party who engages in conduct to prolong litigation.

Cases cited by father involved contexts other than child custody; thus, they are distinguishable and not controlling. Father quotes a dissenting (hence not authoritative) opinion from *Troxel v. Granville* (2000) 530 U.S. 57, 101 [147 L.Ed.2d 49, 78, 120 S.Ct. 2054] (dis. opn. of Scalia, J.) which said, "If a

single parent who is struggling to raise a child is faced with visitation demands from a third party, the attorney's fees alone might destroy her hopes and plans for the child's future. Our system must confront more often the reality that litigation can itself be so disruptive that constitutional protection may be required." Father's case is not assisted by this citation to a dissenting opinion in a case that held application of a child visitation rights statute to allow visitation rights to parental grandparents violated the mother's due process right to bring up her children.

Father says the United States Supreme Court has already spoken on this issue by explicitly stating the wealth of litigants is an impermissible factor to use in awarding attorney's fees. He cites *Gulf, C. & S. F. R. Co. v. Ellis* (1897) 165 U.S. 150, 155 [41 L.Ed. 666, 17 S.Ct. 255], which held invalid on equal protection grounds a statute imposing attorney's fees (not to exceed $10) upon railway corporations, but not any other corporations or individuals, for failing to pay certain claims within a certain time after presentation. On the page cited by father, the *Gulf* court said classifications cannot be made arbitrarily: "[t]he [s]tate may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them, and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." (*Id.* at p. 155.)

In the case before us, there is a reasonable and just (indeed, compelling) reason to impose attorney's fees on the wealthier party—to ensure that both sides of the custody dispute are represented and are able to present evidence bearing on the best interests of the child—in proceedings where a court is determining who gets custody of a child.

Other cases cited by father are similarly distinguishable because they did not involve payment of attorney's fees to ensure that opposing viewpoints are presented to the family court in making determinations implicating the best interests of a child in custody proceedings.

▪ The state may legitimately impose a requirement that one parent pay the attorney's fees of the other parent in order to assure that the best interests of the child are vindicated in the legal proceedings. (*In re Marilyn H., supra,* 5 Cal.4th 295, 307 [welfare of child is a compelling state interest].)

We recognize father in the case before us thinks *he* represents the child's best interests and mother's position does not. However, reasonable minds

could differ on that point. The statute in this case, section 7640, requiring father to pay fees even though he prevails, is the best way of making sure that opposing points of view may be heard, so that the best interests of the child are vindicated, regardless of which parent wins or loses.

In his reply brief, father develops an argument that the "best interests of the child" cannot overcome a due process challenge to section 7640, because the "best interests of the child" standard is itself unconstitutionally vague. We decline to consider this argument, which was not presented in father's opening brief under the headings devoted to challenging section 7640. (*Garcia v. McCutchen, supra*, 16 Cal.4th 469, 482, fn. 10; *Neighbours v. Buzz Oates Enterprises, supra*, 217 Cal.App.3d 325, 335, fn. 8.)

Father argues that, even if there is a compelling state interest supporting section 7640, the law is not narrowly tailored to serve that interest. However, in this portion of his argument, father misdefines the compelling state interest as merely "level[ing] the playing field" between him and mother. He says there is no compelling interest in providing mother with attorney's fees to fund her exercise of her personal liberties. He cites *Lassiter v. Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153], which held refusal to appoint counsel for a mother in a proceeding to terminate parental rights did not violate due process. However, in that case the discussion focused on the mother's interests, not the child's interests, since the child was provided with an attorney to act as guardian ad litem. (*Id.* at pp. 28–29.) Here, the compelling interest is not the mother's personal liberties, but the child's best interests, and the burden of paying attorney's fees is being placed not on the taxpayers but on a parent, who assumed responsibility for the child by becoming a parent.

Father contends the "best interests of the child" is a pretense, because the money is going to an attorney who represents mother, not the child. However, the statutory scheme, by allowing the trial court the discretion whether to order fees and by allowing only "reasonable" attorney's fees, allows a parent to argue, and the trial court to find, that fees should not be awarded in a particular case if the attorney's services were not for the benefit of the child. (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 576 [187 Cal.Rptr. 200] [court may refuse to award fees for services that have no apparent effect other than to prolong litigation].) That father cannot recover fees for representing himself does not render a fee award in favor of mother unconstitutional. Thus, father's argument does not support his facial challenge to section 7640, and as we discuss *post*, he has not adequately presented an "as applied" challenge.

Father argues the law is not narrowly tailored because it allowed mother to spend 20 times more on attorneys than father. However, we need not consider

this argument, because father cites no evidence in the record on these matters. He merely cites his own argument to the trial court, not any evidence supporting his argument.[6]

Father argues there are less burdensome ways of satisfying the state's compelling interest in children's welfare, such as paying for mother's attorney with general tax funds, encouraging more pro bono work, giving tax credits, and funding family law legal clinics. None of these suggestions renders the statute unconstitutional. The state may properly require the parent of a child to bear attorney's fees caused by a custody dispute between father and mother.

Father claims a statute similar to section 7640 was invalidated in *California Teachers Association v. State of California* (1999) 20 Cal.4th 327 [84 Cal.Rptr.2d 425, 975 P.2d 622] (*CTA*). We disagree. The statute at issue there was Education Code section 44944, which required teachers to pay to the state one-half the costs of an administrative law judge if a teacher exercised his or her constitutional right to a hearing regarding a suspension or dismissal from employment. The Supreme Court has subsequently said *CTA* did not render unconstitutional statutes requiring litigants to pay attorney's fees but was limited to its unique context of a " 'virtually unprecedented' " statute requiring an employee who loses a good faith challenge to discipline to pay for the judge. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 64 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

Father claims section 7640 "chill[s]" his decision to proceed to trial or appeal. He cites the trial court's comment at a hearing on February 6, 2002, in which the court indicated it had previously (at a time when a long cause hearing was contemplated) ordered father to deposit an advance of $6,500 to be applied to mother's attorney's fees, and it was the court's intention that if there was no long cause hearing any balance not ordered paid to mother's attorney would be returned to father. However, this case is distinguishable from the *CTA, supra,* 20 Cal.4th 327, case relied upon by father, because father, by fathering a child, has assumed responsibility for ensuring that a court determining his child's best interests hears opposing viewpoints on the matter, and not merely father's opinion about what those best interests might be.

 We conclude section 7640 is constitutional on its face.

2. *"As Applied" Challenge*

 Father purports to challenge the statute "as applied." However, whereas a facial challenge does not depend on the particular facts of an

---

[6] We disregard factual assertions that father attributes to sources outside the record.

individual case (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1495 [76 Cal.Rptr.2d 342] [statute facially invalid regardless of how it might be applied in any given case]), an "as applied" challenge requires the appellant to present a factual analysis of the individual case. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 404–405 [149 Cal.Rptr. 375, 584 P.2d 512] [where statute may be subject to both constitutional and unconstitutional applications, courts evaluate propriety of application on a case-by-case basis]; *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1129 [61 Cal.Rptr.2d 207] [even where constitutional issues are involved, it is proper to defer to the trial court's finding of historical facts].)

██ Here, although father makes many factual assertions about this case in his appellate brief, he has failed to present a factual analysis supported by citation to the record to demonstrate an unconstitutional application of the statute in this case. We may disregard constitutional claims unsupported by adequate analysis. (*People v. Gordon* (1990) 50 Cal.3d 1223, 1244, fn. 3 [270 Cal.Rptr. 451, 792 P.2d 251]; Cal. Rules of Court, rule 14 [appellate brief must "support any reference to a matter in the record by a citation to the record"].)

Father fails to provide adequate analysis with appropriate citations. He also fails to separate the notions of a constitutional "as applied" challenge and a simple challenge to sufficiency of the evidence. He opts instead for a scattershot approach that in any event fails to demonstrate grounds for reversal.

Father suggests he is not allowed to challenge the amount of mother's attorney's fees, but he provides no citation to evidence in the record supporting this point. He merely cites from the reporter's transcript that the court told mother's attorney to provide a billing statement to father, redacted to protect work product or attorney-client privilege.

In a footnote, father says he was forced to pay for a second case review when mother's first attorney left. However, he merely cites the reporter's transcript where he argued he should not have to pay twice. He fails to show he was forced to pay twice.

██ On appeal, father fails to show the redacted bills left him unable to challenge the reasonableness of the fees, or that he made any such argument to the trial court. Similarly, father complains of the hourly rate of mother's attorney, but he gives no citation to the record. He merely claims a county fee schedule reflects the county pays a lot less for court-appointed lawyers. Father attempted to attach as an appendix to his appellate brief the written arguments he submitted in the trial court. However, father was required to

remove the 17-page reproduction, which exceeded the 10-page limit for appendices. In any event, such incorporation of trial court arguments in an appellate brief is inappropriate. (*Garrick Dev. Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [4 Cal.Rptr.2d 897].)

Father argues it violates fundamental fairness to assign responsibility for attorney's fees based upon financial status of the litigants, without considering how the parties arrived at their economic status. However, he fails to cite evidence in the record to support his factual assertions that he is a hard worker and mother is an unmotivated spendthrift, and he fails to show he presented this argument to the trial court and that the trial court rejected it. Father merely cites the trial court's comment that "awards of attorney's fees in this court are not done based upon the prevailing party or based upon who did—who's the—in the right or who's the person who had the—the better argument. It's based upon the ability to pay and the needs of the party."

Father complains of application of section 7640 to the incident wherein he had to obtain court permission to take his daughter to hear him argue his Pledge of Allegiance case in the federal court of appeals. He asserts it is "absurd" that he had to pay $500 to mother's attorney just to take his child to San Francisco for a day. His characterization does not demonstrate an unconstitutional application of the statute.

Nor is an adequate "as applied" challenge made by father's citations to the trial court's comments that (1) if mother's attorney wanted to forgive the portion of fees payable by mother, that was beyond the province of the court, and (2) the court would probably decline to award attorney's fees if father got close to bankruptcy. Father gives no citation to the record to support his assertion that he has been told that every action he takes will come with a huge surcharge.

Father argues that imposing tens or hundreds of thousands of dollars in attorney's fees on a prevailing party cannot be permissible under *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 at page 648 [183 Cal.Rptr. 508, 646 P.2d 179], which said, in the context of discussing sanctions for frivolous appeals, that free access to the courts requires that parties with colorable claims must be allowed to assert them without fear of suffering a penalty more severe than that typically imposed on defeated parties. Father also invokes *Hale v. Morgan, supra,* 22 Cal.3d 388, which said constitutional limits were exceeded by a $17,300 penalty against a landlord for disconnecting a tenant's water and electricity, pursuant to a statute which assessed a penalty of $100 per day. Father argues "hundred thousand dollar charges to a parent whose sole 'crime' is loving his daughter is surely constitutionally infirm." Here, however, the amount at issue in this appeal is under $30,000, and father fails

to show interference with free access to the courts. Moreover, the problem with the penalty in *Hale* was that the statute at that time made the fixed penalty mandatory and unlimited in duration, and no discretion was permitted to the trier of fact. (*Id.* at p. 399; see *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Here, the amount of fees was discretionary with the trial court.

■ We conclude father has failed to develop any viable "as applied" challenge or other grounds for reversal.

In his prayer for relief, father asks that, if we do not declare section 7640 unconstitutional, we should order (1) that attorney's fees awards under section 7640 must be limited to the amount spent by the paying party for his own attorney, and (2) the paying party has the right to review billing records and challenge inappropriate activities of the attorney. However, father fails to show he was denied the right to review billing records or challenge inappropriate activities, and we reject father's proposal to limit the award to the amount spent for the paying party's attorney.

## II. *Legal Custody*

■ Father contends the trial court wrongfully deprived him of the legal custody of his child. However, the custody orders are interim and not appealable, and we therefore need not consider father's arguments.[7] (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559–560 [101 Cal.Rptr.2d 86].)

In his statement of appealability, father quotes from *Sharon v. Sharon* (1885) 67 Cal. 185 at page 196 [7 P. 456] that "[a] judgment that is conclusive of any question in a case is final as to that question." However, that case involved an order for the payment of money for alimony and attorney's fees. We have already acknowledged appealability of the orders directing payment of money in this case. *Sharon* does not support appealability of the interim custody orders challenged by father in this case, and this court has held such interim custody orders are nonappealable. (*Lester v. Lennane, supra,* 84 Cal.App.4th 536, 559–560.)

Father asks that this court treat as a writ petition his challenge to nonappealable orders. We decline to do so.

---

[7] The orders at issue here are a February 6, 2002, minute order and the trial court's subsequent denial of father's attempt to modify that order. It appears the parties believe the denial of modification is reflected in the minute order of August 22, 2002, and/or September 25, 2002. Both orders bear illegible handwritten notes. The September 25, 2002, minute order is nonappealable on its face for the independent reason that on its face it requires the preparation of a formal order.

III. *Statement of Reasons*

Father contends the trial court violated his right to receive a "Statement of Reason[s]" under section 3082, which provides: "When a request for joint custody is granted or denied, the court, upon the request of any party, shall state in its decision the reasons for granting or denying the request. A statement that joint physical custody is, or is not, in the best interest of the child is not sufficient to satisfy the requirements of this section."

Father says he asked the court to explain why a "50-50" custody arrangement would not be in the child's best interests. However, as we have seen, the custody order was a nonappealable interim order. (*Lester v. Lennane, supra*, 84 Cal.App.4th 536, 559–560.)

IV. *Phone Calls*

Father next contends his "fundamental constitutional right of parenthood" was unjustifiably abridged when the trial court limited his phone calls to his child. Again, interim orders are not appealable. (*Lester v. Lennane, supra*, 84 Cal.App.4th 536, 559–560.)

V. *Child as Unnamed Party in Federal Case*

Father next contends his fundamental constitutional right of parenthood was unjustifiably abridged when the trial court ordered him to remove his child as an unnamed plaintiff from his federal court case challenging the Pledge of Allegiance.

However, we see no court order to this effect. Father cites the reporter's transcript of a hearing on September 17, 2002, in which the court stated: "Right now I'm making the determination that the child isn't to be part of the . . . actual named or unnamed suit [*sic*] because that wasn't part of the agreement of the parties." However, the court went on to indicate the ruling may be subject to refining, and the court would review a cited case (*Palmore v. Sidoti* (1984) 466 U.S. 429 [80 L.Ed.2d 421, 104 S.Ct. 1879]), but the court was indicating the mother "has the right to say that the child shouldn't be part of the action." The minute order for September 17, 2002, indicated the matter was continued to September 25, 2002, regarding "*Palmore,*" and under "Other" the minute order bore an illegible handwritten notation. The minute order for September 25, 2002, bore an illegible handwritten notation and checked off a box requiring mother to prepare a formal order. Our review of the record discloses no formal order, and the parties have not directed our attention to any formal order.

Accordingly, there is no order for us to review with respect to removal of the child from the federal lawsuit. (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 677 [190 Cal.Rptr. 469] [where a formal order is required, a minute order is not appealable], questioned on other grounds in *In re Marriage of S.* (1985) 171 Cal.App.3d 738, 749–750 [217 Cal.Rptr. 561].)

VI. *Order to Show Cause*

On April 8, 2003, father filed a motion asking this court to take judicial notice of a March 3, 2003, Evidence Code section 730 evaluation and report by Benjamin Kaufman, M.D.

On April 9, 2003, mother filed a motion to seal the Evidence Code section 730 evaluation report because it was confidential. In the motion, mother asked that we impose sanctions on father, because custody evaluation reports are strictly confidential and may not be disclosed except to the parties and the trial court. (§ 3111;[8] Cal. Rules of Court, rule 5.220(h)(2) [evaluator must protect confidentiality and not release information to any individual except as authorized by the court or statute]; Super. Ct. Sacramento County, Local Rules, rule 14.12, Rep. of Custody Expert.) Mother noted father is an attorney and has a duty to familiarize himself with the relevant law. Mother also noted this was the second time father had filed the confidential report with this court with no attempt to preserve its confidentiality. The first time was April 3, 2003, when father submitted a copy of the report with a petition for writ of prohibition.

However, mother's request for sanctions did not cite any statutory basis or other legal authority for an award of sanctions. She did refer to a motion to seal the report that she filed in response to father's submission of the report with a petition for writ of prohibition. However, she did not present any legal authority in this appeal.

Accordingly, we deny mother's request for sanctions with respect to father's submission of the confidential report.

VII. *Attorney's Fees on Appeal*

In the last sentence of her brief in this appeal, mother says she "should recover her costs and attorney fees on appeal." We shall award her costs on

---

[8] Section 3111 provides: "(a) . . . If directed by the court, the court-appointed child custody evaluator shall . . . file a written confidential report . . . . [T]he report shall be filed with the clerk of the court in which the custody hearing will be conducted and served on the parties or their attorneys . . . . The report may be considered by the court. [¶] (b) The report shall not be made available other than as provided in subdivision (a). [¶] (c) The report may be received in evidence on stipulation of all interested parties . . . ."

appeal, to which she is entitled pursuant to California Rules of Court, rule 27. However, we deny her request for attorney's fees on appeal, because she has not developed any argument or analysis on the subject. This denial is without prejudice to mother to seek such fees in the trial court.

## CONCLUSION

In summary, section 7640 is constitutional on its face, and father fails to show any grounds for reversal.

## DISPOSITION

The attorney's fees awards reflected in orders of February 6, 2002, March 13, 2002, August 21, 2002, August 22, 2002, and September 17, 2002, are affirmed. The appeal from the September 25, 2002, minute order (which directed preparation of a formal order) is dismissed because the minute order was not appealable. The interim custody orders reflected in orders of February 6, 2002, and August 22, 2002, are not appealable, and the purported appeals from those orders are all dismissed. Mother's request for sanctions as reflected in the order to show cause is denied. Mother shall recover her costs on appeal. (Cal. Rules of Court, rule 27(a).)

Morrison, J., and Butz, J., concurred.