Filed 12/20/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| CHAD GRAYOT, | C097061 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0045347) |
| v. | |
| BANK OF STOCKTON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Placer County, Trisha J. Hirashima, Judge. Reversed.

Auto Fraud Legal Center, Christopher P. Barry, and Michelle A. Cook for Plaintiff and Appellant.

Downey Brand, Matthew J. Weber, Christopher M. Kolkey, and Jennifer L. Williams for Defendant and Respondent.

Severson & Werson, Jan T. Chiton, and Scott J. Hyman for American Financial Services Association as Amicus Curiae on behalf of Defendant and Respondent.

1

"The Federal Trade Commission's 'Holder Rule' requires consumer credit contracts to include specific language permitting a consumer to assert against third party creditors all claims and defenses that could be asserted against the seller of a good or service. (16 C.F.R. § 433.2(a) (1975).)" (*Pulliam v. HNL Automotive Inc*. (2022) 13 Cal.5th 127, 131 (*Pulliam*).) Specifically, the required notice states: "*Any holder* of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (16 C.F.R. § 433.2(a), emphasis added, capitalization omitted.) "This provision gives consumers the ability to 'defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a set-off' and to 'maintain an affirmative action against a creditor who has received payments for a return of monies paid on account.' " (*Pulliam, supra,* at p. 134.)

Plaintiff Chad Grayot purchased a used vehicle from a car dealership pursuant to a contract that included this notice. The contract was later assigned to defendant Bank of Stockton (the Bank), which then became the "holder" of the contract. It is undisputed that the Bank was the holder of the contract at the time the first four payments were made to it, but the dealership is now the holder of the contract. In this action, Grayot sought to hold the Bank responsible for refunding the money he paid under the contract based on the holder provision in the contract. The trial court granted summary judgment for the Bank on the basis that Grayot could not show the Bank is now a holder of the contract. We reverse and remand for further proceedings consistent with this opinion. The Bank may not avoid potential liability for claims that arose when it was the holder of the contract by later reassigning the contract.

2

## I. BACKGROUND

Grayot's complaint alleges four causes of action against the car dealership and the Bank: (1) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.); (2) violation of Business and Professions Code section 17200 et seq.; (3) fraudulent misrepresentation; and (4) negligent misrepresentation.

The Bank moved for summary judgment on the basis that it was not the holder of the contract and was not in possession of any funds paid by Grayot. In support of its motion, the Bank submitted evidence of the following:

On January 31, 2020, Grayot purchased a vehicle from the dealership under a conditional sale contract and security agreement. He made a down payment of $15,000 and financed the balance of the purchase price ($18,746.25). The contract contained the requisite notice under the Holder Rule. The dealership assigned the contract to the Bank. The contract required Grayot to make monthly installment payments on the loan of $335.12 starting March 1, 2020. Between March and June 2020, Grayot made four payments to the Bank totaling $1,340.48 before the present dispute arose. On June 3, 2020, the Bank received a demand from Grayot pursuant to Civil Code section 1782. Grayot's demand stated, "As to Bank of Stockton only, correction can be made by forgiving Mr. Grayot's loan and refunding the money owed to him, which presently consists of his $15,000.00 downpayment and $1,045.36 in monthly payments. . . . In exchange for payment in full as described herein, Mr. Grayot will surrender the Vehicle to whomever directed." Thereafter, the Bank assigned the contract back to the dealership, cancelled Grayot's loan with the Bank, and gave the dealership $1,340.48. On June 23, 2020, the Bank notified Grayot that it was no longer the holder of the contract. The Bank returned the July 2020 payment tendered by Grayot, uncashed, and did not receive any further payments from Grayot. The dealership is the current holder of the contract.

The trial court granted the Bank's motion and entered judgment accordingly. Grayot filed a timely appeal.

## II. DISCUSSION

### A. *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476; see also Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850; see also Code Civ. Proc., § 437c, subd. (p)(2).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra*, at p. 850.) Once the moving party meets its initial burden, the burden shifts to the opposing party to demonstrate the existence of a triable issue of material fact. (*Ibid*.) We review the evidence and the reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. (*Id.* at p. 843.)

The central issue in this case involves interpreting the Holder Rule. " ' " ' We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.' " [Citation.] "If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views." ' [Citation.] We ' "must construe [remedial provisions] broadly, not . . . restrictively " '

4

[citation], ' "so as to afford all the relief" that their "language . . . indicates . . . the Legislature intended to grant." ' " (*Pulliam, supra*, 13 Cal.5th at p. 137.)

B.      *The Holder Rule*

Grayot argues the trial court erred in granting the Bank's motion because liability under the Holder Rule is not limited to the current holder. We agree.

"The Federal Trade Commission (FTC) promulgated the Holder Rule in 1975 in response to rapid growth in consumer installment debt in the United States. (Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40 Fed.Reg. 53506-53507 (Nov. 18, 1975); Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 Fed.Reg. 20022 (May 14, 1976).) Before the Holder Rule, a third party who purchased a consumer's promissory note did so 'free and clear of any claim or grievance that the consumer may have with respect to the seller.' (40 Fed.Reg. 53506, 53507.) This 'holder in due course rule' meant a creditor could seek payment from a buyer on goods never delivered or not delivered as promised while remaining immune from the buyer's claims of fraud, misrepresentation, or breach of contract or warranty against the seller." (*Pulliam, supra*, 13 Cal.5th at pp. 133-134.) For instance, in California, generally, "[u]nder California Uniform Commercial Code section 3305, subdivision (b), a holder in due course takes his or her interest free of many defenses . . . . [Citations.] A holder in due course is the 'holder of an instrument' who took the instrument for value, in good faith, and without notice 'that any party has a defense or claim in recoupment described in subdivision (a) of Section 3305.' " (Cal. U. Com. Code, § 3302, subd. (a)(2).)" (*Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1445-1446, fn. omitted.)

"The FTC recognized that the application of the holder in due course rule to consumer credit sales was 'anomalous' because consumers are not 'in an equivalent position [to commercial entities] to vindicate their rights against a payee.' (40 Fed.Reg., *supra*, at p. 53507.) 'Between an innocent consumer, whose dealings with an unreliable

seller are, at most, episodic, and a finance institution qualifying as "a holder in due course," the financer is in a better position both to protect itself and to assume the risk of a seller's reliability.' (*Id.* at p. 53509.) The FTC recognized that '[c]reditors and sellers are in a position to engage in meaningful, arms-length, bargaining,' which differentiates them from buyers who sign adhesion contracts with sellers. (*Id.* at p. 53523.) Allocating the costs of seller misconduct to the creditor makes it much more likely that the 'market will be policed' of 'unscrupulous merchant[s],' that the market will reflect 'a more accurate price for consumer goods,' and that 'all parties will benefit accordingly.' (*Ibid.*)" (*Pulliam, supra*, 13 Cal.5th at p. 134.) The FTC further explained "the creditor is always in a better position than the buyer to return seller misconduct costs to sellers, the guilty party" because "(1) he engages in many transactions where consumers deal infrequently; (2) he has access to a variety of information systems which are unavailable to consumers; (3) he has recourse to contractual devices which render the routine return of seller misconduct costs to sellers relatively cheap and automatic; and (4) the creditor possesses the means to initiate a lawsuit and prosecute it to judgment where recourse to the legal system is necessary. [¶] We believe that a rule which compels creditors to either *absorb seller misconduct costs or return them to sellers*, by denying sellers access to cut-off devices, will discourage many of the predatory practices and schemes." (40 Fed.Reg., *supra*, at p. 53523, emphasis added.) The FTC also stated, "The creditor may . . . look to a 'reserve' or 'recourse' arrangement or account with the seller for reimbursement. In such cases, the price of financing will more accurately reflect the actual costs of sales finance. [¶] *In cases where 'repurchase' or 'reserve' contracts, or other recourse devices available to creditors, facilitate the return of an account to a seller, or whenever serious harm is occasioned by seller misconduct, the creditor will compel the seller to carry the costs so occasioned.*" (*Ibid.*, emphasis added.) The Bank quotes the italicized portions of these passages to suggest a creditor can absolve itself from liability to the buyer by merely returning the contract to the seller. We disagree. It

6

is clear the FTC intended to reallocate any costs of seller misconduct to the creditor, who could attempt to return those costs to the seller, and not, as the Bank suggests, allow the creditor to put the onus back on the buyer to return those costs to the seller by simply reassigning the contract back to the seller after a claim has accrued.[1] (*Ibid*.)

"To effect this allocation, the Holder Rule requires that the following Notice appear in consumer credit contracts '[i]n connection with any sale or lease of goods or services to consumers, in or affecting commerce': 'Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.' (16 C.F.R. § 433.2(a) (1975), capitalization omitted.) This provision gives consumers the ability to . . . 'maintain an affirmative action against a creditor who has received payments for a return of monies paid on account.' " (*Pulliam, supra*, 13 Cal.5th at p. 134.) That is what Grayot sought to do.

The Bank's assertion that it is not liable because it is no longer the holder is based on the fact that a holder is understood to be the person or entity *in possession* of an instrument. (See Cal. U. Com. Code, § 1201, subd. (b)(21)(A) ["the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession"].) It interprets the Holder Rule to only permit claims against the *current* holder of the instrument, regardless of whether the defendant was the holder when it received the payments that form the basis of the lawsuit. This argument ignores how the rule functions, which is to provide notice within the instrument itself of the abrogation of the holder in due course rule. (16 C.F.R. § 433.2(a).) " 'The clear and

---

[1] Likewise, the Bank's assertion that policy considerations strongly favor limiting the Holder Rule to current holders is not supported by the FTC's explanation of the policy reasons for the rule.

7

unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be "stepping into the seller's shoes." The creditor/assignee will become "subject to" *any* claims or defenses the debtor can assert against the seller.' " (*Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 560.) " 'Therefore, any effort by an intermediary assignee to play "hot potato" with a consumer credit contract will not be effective. If a holder acquired the contract from the seller, the holder is potentially liable to the consumer for return of all monies it received under the contract.' " (*Hernandez v. Apple Auto Wholesalers of Waterbury LLC* (D.Conn. Sept. 30, 2022, No. 3:17-cv-1857) 2022 U.S. Dist. LEXIS 179567, *31-32.)

The respondent's brief asserts there is a "lack of uniformity across the nation as to whether the Holder Rule applies to more than current holders," but cites no authority concluding a defendant was not liable because it was no longer a holder. Indeed, despite the fact the Holder Rule was promulgated more than 45 years ago, the Bank cites no authority interpreting it in the manner it suggests. Our own research has yielded no authority evincing such an understanding; only authority evincing the opposite. (See, e.g., *Melendez v. Westlake Services, LLC* (2022) 74 Cal.App.5th 586, 589 [affirming award of fees against former holder who assigned contract back to seller during litigation]; *Resolution Trust Corp. v. Cook* (Tex.Ct.App. 1992) 840 S.W.2d 42, 45, 49 [affirming judgment against two savings associations and their receiver and conservator despite transfer of note from one savings association to the other].) Furthermore, we find the Bank's attempts to distinguish those authorities that address this issue unconvincing.

In *Associates Home Equity Services, Inc. v. Troup* (N.J.Super.Ct.App.Div. 2001) 343 N.J.Super. 254 [778 A.2d 529], a New Jersey appellate court rejected an argument that assignment of a note rendered the Holder Rule inapplicable. (*Id.* at pp. 276-277.) The court explained, "ECM [(East Coast Mortgage Corp.)], as 'a potential holder' had notice that if it procured the purchase money loan arranged by Wishnia, it may be stepping into Wishnia's shoes. We cannot accept the proposition that the FTC

8

contemplated that such result would not attach simply because of a subsequent assignment of the loan, especially when, as here, *it is claimed that ECM actively participated with Wishnia, the seller, in placing the loan with the Troups*." (*Id.* at p. 277, emphasis added.) The Bank asserts that only the italicized language was the basis for the court's ruling and misrepresents the ruling as remanding the case because fact issues existed regarding whether it actively participated in the wrongful conduct. (See, e.g., *id.* at p. 275 ["there is at the very least a fact issue concerning whether ECM's note constituted a 'purchase money loan' "].) *Associates Home Equity Services, Inc. v. Troup* does in fact interpret the Holder Rule in the manner urged by Grayot. It is also not the only authority to do so.

In *Hernandez v. Apple Auto Wholesalers of Waterbury, LLC* (2021) 338 Conn. 803, 806 [259 A.3d 1157] (*Hernandez*), the Supreme Court of Connecticut interpreted Connecticut General Statutes § 52-572g, subd. (a), which provides in relevant part that "[a]ny holder in due course of a promissory note, contract or other instrument . . . executed by a buyer in connection with a credit transaction covering consumer goods . . . shall be subject to all of the claims and defenses which the buyer has against the seller arising out of the transaction . . . limited to the amount of indebtedness then outstanding in connection with the credit transaction, provided the buyer shall have made a prior written demand on the seller with respect to the transaction." As that court explained, " '[t]he word "any" has a diversity of meanings and may be employed to indicate "all" or "every" as well as "some" or "one" '; [citation]; the word 'holder' does not. It has a decidedly singular meaning in the law: '[s]omeone who has legal possession of a negotiable instrument and is entitled to receive payment on it.' Blacks Law Dictionary (11th Ed. 2019), p. 879." (*Hernandez, supra*, at p. 823.) Thus, the phrase "any holder" "can only mean any person in legal possession of the instrument, not a person formerly in possession of it." (*Id.* at p. 824.) The Bank argues this means *Hernandez* supports its position. It does not. As the *Hernandez* court explained, this "does not mean that it

9

requires continued possession of it for liability to *remain attached. . . .* We read the word 'shall' in the phrase 'shall be subject to' as creating a mandatory duty and the phrase 'provided the buyer shall have made a prior written demand on the seller' as creating a condition precedent for the imposition of that duty such that[,] once[] written demand is made on the seller, the holder's liability attaches." (*Ibid*., emphasis added.) After liability attaches, "the assignee cannot avoid liability by reassigning the promissory note, contract or other instrument back to the seller." (*Id*. at p. 822.) To support its conclusion, the court quoted at length from an unpublished California case that concluded a creditor-assignee cannot avoid liability under the Holder Rule by reassigning the debt instrument after the misconduct has occurred and it has been named as a defendant. (*Id*. at pp. 824-825.)

In granting the Bank's motion for summary judgment, the trial court explained it did not find *Hernandez* persuasive because it was "not aware of any corollary California authority that would allow liability on plaintiff's causes of action to attach at the demand letter." The trial court misunderstood *Hernandez*. The Connecticut statute at issue required the buyer to make a demand on a seller in order to abrogate the traditional holder in due course rule. Here, the traditional holder in due course rule is abrogated by the legal effect of the Holder Rule notice in the contract without any additional requirements. Additionally, " '[t]he Holder Rule does not create any new claims or defenses for the consumer; it simply protects the consumer's existing claims and defenses.' " (*Lafferty v. Wells Fargo Bank, supra*, 213 Cal.App.4th at p. 560.) As such, if the Bank is liable, that liability attached before it reassigned the contract back to the dealership and we agree with *Hernandez* that continued possession is not required for liability to remain attached.[2] (*Hernandez, supra*, 338 Conn. at p. 824.) The trial court erred in concluding otherwise.

_____

[2] This is different from the question of when a creditor can establish a claim as a holder in due course.

## C.  Possession of Funds

As an alternative ground for summary judgment, the Bank argued it could not be liable under the Holder Rule because it does not possess any funds that Grayot paid because it had given those funds to the dealership.  The trial court did not address this issue.  On appeal, the parties dispute whether this ground has merit.  We conclude it affords no basis to affirm the trial court's ruling.  The Bank's argument is based on the Holder Rule's cap on recovery:  "Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."  (16 C.F.R. § 433.2(a), capitalization omitted.)  "This provision gives consumers the ability to . . . 'maintain an affirmative action against a creditor who has received payments for a return of monies paid on account.' " (*Pulliam, supra*, 13 Cal.5th at p. 134.)  The Bank cited no authority in the trial court or on appeal indicating this cap precludes recovery where the amounts paid by the debtor have been given to someone other than the debtor.

## D.  Request for Attorney's Fees

In the final sentence of the conclusion of his opening brief, Grayot asserts we should find he is entitled to recover his attorney's fees under Code of Civil Procedure section 1021.5.  We deny this request on the basis that Grayot "has not developed any argument or analysis on the subject."  (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 459.)

11

### III.  DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views stated herein.  Plaintiff Chad Grayot shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KEITHLEY, J.[*]

---

[*] Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.