[No. C067812. Third Dist. Feb. 4, 2013.]

PATRICK LAFFERTY et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, Defendant and Respondent.

## COUNSEL

Law Offices of Timothy D. Murphy and Timothy D. Murphy for Plaintiffs and Appellants.

Severson & Werson and Jan T. Chilton for Defendant and Respondent.

## OPINION

**HOCH, J.**—This case involves claims by the buyer of an allegedly defective motor home against a lender to whom the installment sale contract was assigned by the dealer. At the heart of the controversy is a question that has divided courts in several jurisdictions: What is the meaning of the contract provision required by title 16, part 433.2, of the Code of Federal Regulations

(2012)?[1] Commonly referred to as the "Holder Rule," it is required by the Federal Trade Commission (FTC) for every consumer installment sale contract that is assigned to a lender. The Holder Rule requires the following language in 10-point (or larger) and bold typeface: "NOTICE [¶] ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." (§ 433.2(a) (2012).)

Here, Patrick and Mary Lafferty (the Laffertys) bought a motor home from Geweke Auto & RV Group (Geweke) that was financed with an installment contract. Shortly after the sale, Geweke assigned the contract to Wells Fargo Bank (Wells Fargo) in accordance with the terms of a separate dealer agreement. The Laffertys allege the motor home was defective from the start. After months passed without the demanded repairs being made, the Laffertys disclaimed their ownership interest in the vehicle and sued Geweke. The Laffertys also sued Wells Fargo on the ground the Holder Rule allows them to assert all claims against the lender they otherwise had against the dealer.

The trial court concluded the Holder Rule did not allow the Laffertys to assert claims against a lender that pertained only to the responsibilities of the seller. Finding no other consumer laws supported the Laffertys' claims against Wells Fargo, the trial court entered judgment in favor of Wells Fargo. The trial court also awarded attorney fees to Wells Fargo.

On appeal, the Laffertys contend (1) the Holder Rule allows them to assert any claims against Wells Fargo they might otherwise have against Geweke; (2) their breach of contract action for a defective motor home lies against Wells Fargo both as a party to the contract and as a third party beneficiary of the dealer agreement; (3) federal law does not preempt their causes of action for negligence and negligent defamation of credit; (4) Wells Fargo violated the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1770 et seq.), the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq.), the Tanner Consumer Protection Act (Civ. Code, § 1793.22), and engaged in unfair business practices; and (5) Wells Fargo was not entitled to attorney fees.

---

[1] Undesignated section references are to title 16, part 433.2, of the Code of Federal Regulations (2012).

We hold that the plain meaning of the Holder Rule allows the Laffertys to assert all claims against Wells Fargo they might otherwise have against Geweke. Under the Holder Rule, however, the Laffertys may recover no more than what they actually paid toward the installment contract. Although the Holder Rule allows the same claims against a lender that might be brought against the seller, it does not create any causes of action. Thus, we examine whether the Laffertys have causes of action against Wells Fargo that arise from other sources. We conclude the Laffertys' operative complaint states causes of action against Wells Fargo under the CLRA and for negligence. However, the Laffertys' claim of negligent defamation of credit is preempted by federal law. As to their cause of action for declaratory and injunctive relief, the Laffertys lack standing to assert the claim.

We find the Laffertys have forfeited their causes of action for breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Song-Beverly Act, violation of the Tanner Consumer Protection Act, and unfair business practices. Since we reverse the judgment, we also reverse the award of attorney fees because Wells Fargo is no longer necessarily the prevailing party in this action.

## BACKGROUND

### Purchase of the Motor Home

On November 1, 2005, the Laffertys bought a motor home manufactured by Fleetwood Motor Homes (Fleetwood) from Geweke. Pursuant to the terms of the installment contract, the Laffertys agreed to pay a total of $389,929 for the motor home over the course of 239 months.[2] The Laffertys also paid $4,000 to Geweke for a separate extended service contract with Phoenix American Warranty Company, Inc. (Phoenix American).[3]

Geweke assigned the installment contract to Wells Fargo in accordance with the terms of a dealer agreement entered into between Wells Fargo and Geweke.

### Problems with the Motor Home

After taking possession of the motor home, the Laffertys immediately took the vehicle for a seven-day trip. Upon their return, they brought the motor

---

[2] The Laffertys made a downpayment of $6,116.44. The remaining purchase price of $191,340 was financed at an annual percentage rate of 7.99 percent. At this rate, the cost of financing the purchase was $192,472.80.

[3] Phoenix American claimed it was not paid for, and had neither accepted nor approved, this service contract.

home to Geweke complaining of electrical failures and cosmetic issues. No repairs were performed for more than two weeks. Because the Laffertys had a Thanksgiving trip planned, they took the unrepaired motor home from November 23 through December 1, and then returned the vehicle to Geweke for completion of the original repairs and for resolution of additional electrical and mechanical failures that occurred during the second trip.

On December 23, 2005, Geweke called the Laffertys and informed them they would be required to authorize $1,300 for a "failure analysis" to determine whether some of the problems were caused by operator error. The Laffertys declined to authorize the payment. On January 11, 2006, they wrote to Fleetwood describing the situation, quoting a provision of Fleetwood's "on-line warranty statement," and stating: "The RV is and has been at the dealership for the last 42 days. Due to the nature of the failures, principally electrical in nature the RV is considered an unsafe vehicle and may fall under California Lemon laws." On February 7, 2006, the Laffertys informed Wells Fargo they would stop making payments until the motor home was repaired.

On April 25, 2006, the Laffertys' attorney wrote to Fleetwood explaining, "the Laffertys relinquished their ownership interest" in the motor home, "[t]he finality of the return is not under discussion," and "[t]he remaining question is how much money they will receive in compensation for their unfortunate experience." Without discussing the merits of any potential claims, counsel identified four possible defendants, i.e., Fleetwood, Geweke, Wells Fargo, and Phoenix American. The letter concluded: "It may be that you better than anyone else, can coordinate a resolution among the concerned parties. If so, I invite you to proceed. However, when and if it becomes clear that rapid progress towards resolution is not occurring, I intend to pursue the remedies necessary to conclude the matter favorably."

In June 2006, Geweke informed the Laffertys the motor home was repaired. Apparently, this was not the case. The Laffertys declined to pick up the motor home and stopped making payments. Wells Fargo took possession of the motor home in accordance with the terms of the installment contract, but took no action to collect any amount of money from the Laffertys. Wells Fargo did report to various consumer credit reporting agencies that the Laffertys had defaulted on their agreement to pay for the motor home.

### The Lawsuit

In November 2006, the Laffertys sued Fleetwood, Geweke, Wells Fargo, and Phoenix American, alleging seven causes of action for breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the CLRA, violation of the Song-Beverly Act, violation

of the Tanner Consumer Protection Act, and negligence. The original complaint was amended twice. The operative second amended complaint added five causes of action for insurance bad faith, unfair business practices, fraud, negligent credit defamation, and declaratory and injunctive relief. Wells Fargo was named as a defendant in all but the insurance bad faith and fraud causes of action.

As against Wells Fargo, the causes of action for breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the CLRA, violation of the Song-Beverly Act, violation of the Tanner Consumer Protection Act, and unfair business practices were premised on the fact that Wells Fargo was the assignee of the installment contract entered into between the Laffertys and Geweke. According to the complaint, "the FTC 'Holder Rule' and California state law mak[e] such a holder and/or assignee financer subject to any claims or defenses that might be asserted against the seller and/or manufacturer of the motor home."

With respect to the negligence cause of action, the Laffertys alleged defendants owed a duty "to diligently, competently and timely complete repairs to the motor home in a workmanlike manner, and failed to do so." The Laffertys further alleged they "notified defendants Fleetwood, Geweke and Wells Fargo of their breach of warranty in January 2005 [*sic*: 2006]. They notified defendants again on April 25, 2006 that they had elected to return the motor home. [Citation.] The defendants and each of them, have refused to accept return of the motor home and to act accordingly in conformity to law." The Laffertys also alleged that Wells Fargo "falsely reported to various credit rating agencies that [they] had defaulted in their obligation, and failed to report that payment of the amounts that Wells Fargo claimed were due, were in fact legitimately disputed in relation to a breach of warranty." This conduct, alleged the Laffertys, violated Wells Fargo's fiduciary relationship with and breached its duty of care to them.

With respect to the negligent credit defamation cause of action, the Laffertys alleged that Wells Fargo "falsely reported to various credit rating agencies that [they] had defaulted in their obligations, failing to report that payment of the amounts which Wells Fargo claimed were due, were in fact legitimately disputed in relation to a breach of warranty." This conduct, alleged the Laffertys, "wrongfully defamed, slandered and libeled [their] credit rating, impairing and harming it to the extent that, subsequent to communication of the erroneous report published by . . . Wells Fargo, [they] have been unable to conduct normal credit related consumer transactions."

Finally, with respect to the declaratory and injunctive relief cause of action, the Laffertys sought a declaration as to whether the dealer agreement entered into between Wells Fargo and Geweke insulated Wells Fargo from liability for "any claims or defenses" the Laffertys could assert against Fleetwood or Geweke under the Holder Rule. The Laffertys also sought a declaration as to whether their "revocation of acceptance of their Fleetwood motor home, and return of possession of it to the defendant dealer Geweke, nullifies any claim to a security interest in the motor home by defendant Wells Fargo under the installment sales contract which it purchased, and that Wells Fargo is consequently required to file a release of any notice of security interest(s) that it may have filed under [California Uniform Commercial Code] Article 9 or otherwise." The Laffertys further requested an injunctive order "prohibit-[ing] further conduct by any defendant to defame or harm their credit rating through the reporting of false or inaccurate information," and "prohibit[ing] unfair competitive practices as described herein, including the misrepresentation of warranties, the fraudulent sale of warranty and service contracts, and the wrongful refusal to discharge manufacturer's and seller's warranty obligations."

### Wells Fargo's Demurrer

In July 2009, Wells Fargo demurred to the second amended complaint, asserting the Laffertys failed to allege facts sufficient to state causes of action for (1) violation of the CLRA, (2) negligence, (3) negligent credit defamation, and (4) declaratory and injunctive relief. The Laffertys opposed the motion.

On December 1, 2009, the trial court sustained the demurrer without leave to amend. Thereafter, Wells Fargo filed an answer to the six remaining causes of action, generally denying the allegations of the second amended complaint and asserting several affirmative defenses.

### Wells Fargo's Summary Adjudication Motion

On June 29, 2010, Wells Fargo filed a motion for summary adjudication of the remaining six causes of action: breach of warranty; breach of contract; breach of the implied covenant of good faith and fair dealing; violation of the Song-Beverly Act; violation of the Tanner Consumer Protection Act; and unfair business practices. Wells Fargo argued summary adjudication was required based on the correct resolution of a "single issue of law" common to each of the remaining causes of action, i.e., Wells Fargo cannot be

affirmatively sued for Geweke's alleged misconduct simply because the installment contract was assigned to Wells Fargo. Wells Fargo also objected to the evidence the Laffertys produced to create a factual dispute, pointing out that the Laffertys relied wholly on their own interrogatory responses, which "regurgitate" the allegations in the second amended complaint. Wells Fargo also objected to purported factual statements that were actually "pure argument" with "no evidence whatsoever."

On October 8, 2010, the trial court sustained all of Wells Fargo's evidentiary objections and entered summary judgment in favor of Wells Fargo. With respect to each cause of action, the trial court ruled that because the evidence relied upon by the Laffertys was "in all material respects repetitive of the allegations of their unverified Second Amended Complaint," they were "effectively relying on the allegations of their operative complaint to attempt to create a triable issue of material fact. They cannot do so."

The trial court also agreed with Wells Fargo that the Holder Rule limits claims by buyers against lenders that would otherwise lie only against the seller to cases in which little or no value was received by the buyer. The trial court reasoned: "That Geweke assigned the sales contract to Wells Fargo does not mean . . . that Wells Fargo affirmatively agreed that it would repair the [motor home] when the manufacturer or dealer failed to. The contractual 'Holder' language itself states that the Debtor's recovery *shall not exceed* amounts paid by the Debtor, which means that any affirmative relief [the Laffertys] have under the contract is limited to no more than what they have already paid on the contract. Further, [the Laffertys] provide no evidence that Wells Fargo affirmatively agreed to assume Geweke's warranty obligations. And such assumption would be contrary to normal commercial practice. [¶] Wells Fargo took a security interest in the [motor home]. [Citations.] Typically, the party who accepts assignment of a contract as collateral security for money loaned does *not* become a party to the contract or obligate itself to perform the assignor's scope of contractual performance. [Citation.] An assignment for security is not an assignment of 'all rights under the contract' and does not serve to delegate the assignor's obligations to perform to the assignee. [Citation.] 'The mere existence of a security interest . . . does not impose contract or tort liability upon the secured party for the debtor's acts or omissions.' [Citations.]"

The trial court rejected the Laffertys' cause of action for disparagement of their credit on grounds that claims "for credit disparagement are preempted by the federal Fair Credit Reporting Act (15 USC section 1681, *et seq.*)."

*Trial Against Geweke*

Following summary adjudication in favor of Wells Fargo, trial proceeded against Geweke.[4] Geweke did not appear for trial.[5] The Laffertys presented their case and received a judgment in the amount of $210,000.

*Wells Fargo's Motion for Attorney Fees*

On November 16, 2010, Wells Fargo moved for attorney fees under Civil Code section 1717. The Laffertys opposed the motion. The trial court awarded Wells Fargo $45,700 in attorney fees. Thereafter, judgment was entered in favor of Wells Fargo. This appeal followed.

DISCUSSION

I

*The Holder Rule (§ 433.2 (2012))*

The Laffertys contend the Holder Rule allows them to assert any claims against Wells Fargo they might otherwise have against Geweke, the dealer who sold them the motor home. We agree, but with a caveat. As we explain, the Holder Rule limits the Laffertys to recovering no more than what they have paid under the installment contract.

A.

*Review*

We review questions of law as well as orders granting summary adjudication under the de novo standard of review. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Likewise, issues of statutory construction and contract interpretation that do not turn on extrinsic evidence are subject to independent review. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740]; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 [132 Cal.Rptr.2d 151].)

---

[4] Fleetwood declared bankruptcy.

[5] Geweke is not a party to this appeal.

■ Here, we are called to construe the Holder Rule, a regulation promulgated by the FTC. (§ 433.2 (2012).) "Although the final responsibility for interpreting a statute or regulation rests with the court, judicial deference must often be accorded to the construction applied by an agency charged with the law's administration and enforcement. (*Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756–757 [151 P.2d 233]; *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214 [103 Cal.Rptr.2d 75] (*Spanish Speaking Citizens*).) ' "The appropriate degree of judicial scrutiny in any particular case is perhaps not susceptible of precise formulation, but lies somewhere along a continuum with nonreviewability at one end and independent judgment at the other." [Citation.] Quasi-legislative administrative decisions are properly placed at that point of the continuum at which judicial review is more deferential; ministerial and informal actions do not merit such deference, and therefore lie toward the opposite end of the continuum.' (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 575–576 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)" (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1034 [56 Cal.Rptr.3d 294].)

■ Quasi-legislative regulations are construed using the same principles as for the interpretation of statutes. (*Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171, 178 [129 Cal.Rptr.2d 254].) For regulations and statutes, our guiding principle " 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 392 [44 Cal.Rptr.3d 348].) We heed our Supreme Court's explanation that "it is well settled that we must look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.' (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If the statutory language is clear and unambiguous our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; see *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) . . . Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)" (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].) With these principles in mind, we turn to the Holder Rule.

## B.

### *The Holder Rule*

The present case is not the first in which this court has examined the meaning of the language required by the Holder Rule. In *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610 [39 Cal.Rptr.2d 159] (*Music Acceptance Corp.*), this court considered the Holder Rule in the context of claims regarding a defective grand piano. (32 Cal.App.4th at pp. 613–614.) The piano was purchased by Lofing from Sherman Clay & Co. and financed by lender Music Acceptance Corp. Lofing was sued by the lender for breach of contract after he stopped making payments. (*Id.* at p. 614.) In turn, Lofing counterclaimed based on the express terms of the sales contract as well as on various state and federal consumer protection laws. (*Id.* at pp. 614, 622.) A jury trial resulted in an award against the piano's manufacturer and seller for Lofing's breach of warranty claims and against Lofing for nonpayment to the lender. (*Id.* at p. 614.)

On appeal, Lofing challenged the award to the lender by arguing that his proof of the breach of warranty should have barred the lender from recovering the unpaid balance on the piano. (*Music Acceptance Corp., supra,* 32 Cal.App.4th at p. 622.) Applying the Unruh Act (Civ. Code, § 1801 et seq.), we agreed and reversed the award against Lofing. (*Music Acceptance, supra,* at pp. 625–626.) We also noted "[t]he same result obtains under federal law" due to the language of the Holder Rule, which was set forth in the contract. (32 Cal.App.4th at p. 626.)

*Music Acceptance Corp.* noted "[t]he FTC enacted [the Holder Rule] because it believed it was 'an unfair practice for a seller to employ procedures in the course of arranging the financing of a consumer sale which separate[d] the buyer's duty to pay for goods or services from the seller's reciprocal duty to perform as promised.' (Statement of Basis and Purpose, 40 Fed.Reg. 53522 (Nov. 18, 1975).) The FTC explained: 'Our primary concern . . . has been the distribution or allocation of costs occasioned by seller misconduct in credit sale transactions. These costs arise from breaches of contract, breaches of warranty, misrepresentation, and even fraud. The current commercial system which enables sellers and creditors to divorce a consumer's obligation to pay for goods and services from the seller's obligation to perform as promised, allocates all of these costs to the consumer/buyer.' (*Ibid.*)

"In its 'Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses,' the FTC explained further: '[The] dramatic increase in consumer credit over the past thirty years has caused certain problems. Evolving doctrines and principles of contract law have not kept pace with changing social needs. One such legal doctrine which has worked to deprive consumers of the protection needed in credit sales is the so-called "holder in due course doctrine." Under this doctrine, the obligation to pay for goods or services is not conditioned upon the seller's corresponding duty to keep his promises. [¶] Typically, the circumstances are as follows: A consumer relying in good faith on what the seller has represented to be a product's characteristics, service warranty, etc., makes a purchase on credit terms. The consumer then finds the product unsatisfactory; it fails to measure up to the claims made on its behalf by the seller, or the seller refuses to provide promised maintenance. The consumer, therefore, seeks relief from his debt obligations only to find that no relief is possible. His debt obligation, he is told, is not to the seller but to a third party whose claim to payment is legally unrelated to any promises made about the product. [¶] The seller may, prior to the sale, have arranged to have the debt instrument held by someone other than himself; he may have sold the debt instrument at a discount after the purchase. [¶] From the consumer's point of view, the timing and means by which the transfer was effected are irrelevant. He has been left without ready recourse. He must pay the full amount of his obligation. He has a product that yields less than its promised value. And he has been robbed of the only realistic leverage he possessed that might have forced the seller to provide satisfaction—his power to withhold payment.' (41 Fed.Reg. 20022 (1976).)

"As one court noted, before this rule was adopted '[t]he reciprocal duties of the buyer and seller which were mutually dependent under ordinary contract law became independent of one another. Thus, the buyer's duty to pay the creditor was not excused upon the seller's failure to perform. In abrogating the holder in due course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee. The FTC rule was therefore designed to reallocate the cost of seller misconduct to the creditor. The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller.' (*Home Sav. Ass'n* v. *Guerra* (Tex. 1987) 733 S.W.2d 134, 135.)" (*Music Acceptance Corp., supra*, 32 Cal.App.4th at pp. 627–628.)

In *Music Acceptance Corp.*, we further noted the importance of following the plain meaning of the language required by the Holder Rule as follows: "[I]t is irrelevant whether the FTC rule applies. Even if such a notice was not

required to be given, the fact remains that it was: Lofing's contract included the precise language mandated by the FTC rule. Put simply, Lofing is in the same position whether we apply the FTC rule, the Unruh Act, or the language of his particular contract." (*Music Acceptance Corp., supra*, 32 Cal.App.4th at p. 630.) Even though our prior resolution of the meaning of the language required by the Holder Rule did not constitute the rule of decision in *Music Acceptance Corp.*, we continue to adhere to the plain meaning of the language required by the Holder Rule.

■ The Holder Rule unambiguously allows the buyer to assert against the holder of a consumer credit contract *"all claims* and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds" of the financing. (§ 433.2 (2012), italics added & capitalization omitted.) The plain meaning of the phrase "all claims and defenses which the debtor could assert against the seller" encompasses not only the defensive claims that a buyer might have but also includes causes of action that a buyer might assert against the seller. "The clear and unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be 'stepping into the seller's shoes.' The creditor/assignee will become 'subject to' *any* claims or defenses the debtor can assert against the seller. The notice does not say that a seller will be liable for the buyer's damages only if the buyer received little or nothing of value under the contract. Nor does the notice purport to limit a creditor/assignee's liability in such fashion." (*Oxford Finance Companies, Inc. v. Velez* (Tex.Ct.App. 1991) 807 S.W.2d 460, 463.) Thus, we agree with the FTC's recent explanation that "[a] creditor or assignee of the contract is thus subject to all claims or defenses that the consumer could assert against the seller. The Holder Rule does not create any new claims or defenses for the consumer; it simply protects the consumer's existing claims and defenses." (FTC Advisory Opn. (May 3, 2012), p. 2.)

■ Although the FTC's original adoption of the Holder Rule in 1975 was accompanied by statements indicating claims were limited to instances in which the consumer received little or nothing in value for the transaction, we decline to depart from the clear language required by the Holder Rule. Fundamentally, the Holder Rule language for contracts constitutes a *notice* to consumers. To ensure the notice is conspicuous, the language must be set forth in a typeface that is at least 10 points in size, boldface, and uses all capital letters. It would be antithetical to the language and its typographic emphasis to hold that the Holder Rule language does not mean what it says.
■ "[W]here the language of a statute is unambiguous, we may only look to its plain meaning unless this would frustrate its apparent purpose or lead to an absurd result. (*Williams v. Superior Court* (2001) 92 Cal.App.4th 612, 621 [111 Cal.Rptr.2d 918]; *Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 874 [69 Cal.Rptr.2d 494].) Here the language of the statute is plain, a plain reading

does not frustrate the apparent purpose of the statute, and no absurdity results. We therefore decline defendant's invitation that we engage in a hermeneutic exercise to demonstrate that the statute means something other than what it says." (*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 406 [7 Cal.Rptr.3d 546]; see *Lozada v. Dale Baker Oldsmobile, Inc.* (W.D.Mich. 2000) 91 F.Supp.2d 1087, 1095 ["No basis exists for referring to the commentary to understand the meaning of language that is unambiguous on its face"].) Based on the plain meaning of the Holder Rule, we reject Wells Fargo's argument that it is "limited to the rare situation when the seller's breach of contract renders the transaction practically worthless to the consumer."

For the same reason, we decline to follow the reported decisions of other jurisdictions that have departed from the plain meaning of the language required by the Holder Rule. Thus, we reject the approach taken in the case of *Ford Motor Credit Co. v. Morgan* (1989) 404 Mass. 537 [536 N.E.2d 587] (*Ford Motor Credit*). In that case, the court avoided the plain meaning of the Holder Rule by "look[ing] to the FTC's purpose in enacting the rule as a guide to [the] interpretation of the contract provision." (536 N.E.2d at p. 589.) As *Ford Motor Credit* notes, "The rule was designed to preserve the consumer's claims and defenses by cutting off the creditor's rights as a holder in due course." (*Ibid.*) Relying on the FTC's explanation for the Holder Rule in the Federal Register, the court noted the agency's statement that " '[c]onsumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payments and received little or nothing of value from the seller. In a case of non-delivery, total failure of performance, or the like, we believe the consumer is entitled to a refund of monies ·paid on account.' " (536 N.E.2d at p. 590, quoting FTC Statement of Basis and Purpose 40 Fed.Reg. 53505, 53527 (Nov. 18, 1975).) *Ford Motor Credit* also notes the FTC originally "anticipated that the rule would enable the courts to weigh the equities in the underlying sale, and 'remain the final arbiters of equities between a seller and a consumer.' " (536 N.E.2d at p. 590, quoting 40 Fed.Reg. 53505, 53524 (Nov. 18, 1975).)

Cases following *Ford Motor Credit* similarly resort to the secondary authority of the FTC's stated intent in 1975 for the Holder Rule rather than adhering to the plain language employed by the rule. For example, the court in *Irby-Greene v. M.O.R., Inc.* (E.D.Va. 2000) 79 F.Supp.2d 630 acknowledged that "were the plain language of the clause to control, plaintiff would be able to assert any cause of action against [lender] which she [or he] might have against [the auto dealer], although plaintiff's recovery would be limited to the amount actually paid to [the dealer]." (*Id.* at p. 635.) Even so, the *Irby-Greene* court reasoned, "comments published in the Federal Register by the FTC suggest that the Holder Rule has certain limits not otherwise present in the clause's plain language." (*Ibid.*; accord, *Crews v. Altavista Motors,*

*Inc.* (W.D.Va. 1999) 65 F.Supp.2d 388, 390 [relying on the FTC's 1975 Statement of Basis and Purpose]; *Mount v. LaSalle Bank Lake View* (N.D.Ill. 1996) 926 F.Supp. 759, 763 [same]; *In re Hillsborough Holdings Corp.* (Bankr. M.D.Fla. 1992) 146 B.R. 1015, 1020 [same]; *Oxford Finance Companies, Inc. v. Velez, supra,* 807 S.W.2d at p. 463 [same].) Our review of case law declining to allow buyers the full panoply of "claims and defenses" against lenders has not uncovered any decision holding the plain meaning imposes any of the limitations on claims the 1975 Statement of Basis and Purpose seems to allow.

Wells Fargo contends the Holder Rule language is ambiguous and lenders would be surprised by a construction that deems "claims" to mean all claims and defenses. We disagree for three reasons. First, the contention contradicts Wells Fargo's admission in the trial court that the terms of the installment contract—including the Holder Rule notice—are unambiguous. Second, the contention assumes an ambiguity that is at odds with the clear language of the notice required by the Holder Rule. Wells Fargo's construction of the Holder Rule renders "claims" mere surplusage because it endows the term with the same meaning as "defenses"—a term separately used in the Holder Rule notice. Third, it asserts a surprise that is not supported by the development of the case law.

Although there is a split of authority over the meaning of the Holder Rule, reported cases have adhered to the plain meaning of section 433.2 (2012) for more than 30 years. (See, e.g., *Lozada v. Dale Baker Oldsmobile, Inc., supra,* 91 F.Supp.2d at p. 1095; *Simpson v. Anthony Auto Sales, Inc.* (W.D.La. 1998) 32 F.Supp.2d 405, 409; *Eachen v. Scott Housing Systems, Inc.* (M.D.Ala. 1986) 630 F.Supp. 162, 165; *Hempstead Bank v. Babcock* (N.Y.Sup.Ct. 1982) 115 Misc.2d 97, 99 [453 N.Y.S.2d 557]; *Thomas v. Ford Motor Credit Co.* (1981) 48 Md.App. 617, 622 [429 A.2d 277].) Especially given this court's prior construction of the Holder Rule language in *Music Acceptance Corp., supra,* 32 Cal.App.4th at pages 627 to 628, our adherence to the plain meaning of the rule should come as no surprise.

■ We also reject Wells Fargo's assertion the Rees-Levering Automobile Sales Finance Act (Rees-Levering Act) limited the Laffertys' right to rescission of the installment contract. "The Rees-Levering Automobile Sales Finance Act [(Civ. Code, § 2981 et seq.)] became effective January 1, 1962. The act replaced the 1945 Automobile Sales Act and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer. Soon after its enactment, the California Supreme Court declared: ' ". . . 'The obvious purpose of the statute is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of

cost' [citation]; the form and requisites prescribed by the statute are mandatory; a contract which does not *substantially* conform thereto is unenforceable; and a buyer who has made payments to the seller under such a contract may recover them . . . ." ' (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649]; italics in original.)" (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69 [164 Cal.Rptr. 279], fn. omitted.) The Rees-Levering Act preceded rather than superseded the Holder Rule. Moreover, we perceive nothing in the Rees-Levering Act, which was intended to facilitate disclosure to the unsophisticated vehicle purchaser, that undermines the consumer protection conferred by the Holder Rule. (See *Hernandez, supra,* at pp. 69–70.)

 In short, the Holder Rule allows the Laffertys to assert the same "claims and defenses" against Wells Fargo that they might otherwise have against Geweke.

## C.

### *The Limitation on Recovery and the Need to "Borrow" Causes of Action*

The Laffertys contend they made "9 payments totaling $14,553.74 as proved at trial plus fees and taxes of $15,415.88 as proved, plus down payment of $6,116.44 as proved, plus warranty and insurance of $5,682 as proved." Wells Fargo estimates the Laffertys have paid only $9,315.88 toward the installment contract. On appeal, we do not resolve such contested issues of fact. Nonetheless, we hold—to the extent the Laffertys have causes of action against Geweke that are also valid against Wells Fargo by operation of the Holder Rule—their recovery is limited to the amount they have paid under the installment contract. The Holder Rule expressly states, "recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (§ 433.2 (2012), capitalization omitted.)

 Although the Holder Rule allows claims against sellers to be asserted against lenders, the Holder Rule does not itself provide a cause of action. More specifically, the Laffertys may assert causes of action against Wells Fargo under the Holder Rule only to the extent they have separately arising claims against Geweke. "[P]rivate actions to vindicate rights asserted under the [FTC] may not be maintained." (*Holloway v. Bristol-Myers Corp.* (D.C. Cir. 1973) 158 U.S. App.D.C. 207 [485 F.2d 986, 987].) Thus, the Laffertys must "borrow" a cause of action from another statute or common law source to assert a claim against Wells Fargo. We examine the Laffertys' individual causes of action below.

## II

### *Causes of Action Dismissed by Demurrer*

The Laffertys contend the trial court erroneously sustained Wells Fargo's demurrer to their causes of action for violation of the CLRA, negligence, negligent credit defamation, and declaratory and injunctive relief. As to the CLRA and negligence causes of action, we conclude the trial court erred in sustaining the demurrer. However, we conclude the trial court correctly sustained the demurrer for the causes of action for negligent credit defamation and declaratory and injunctive relief.

### A.

### *Review of an Order Dismissing a Cause of Action After the Sustaining of a Demurrer Without Leave to Amend*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint alleges facts sufficient to state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 [130 Cal.Rptr.2d 392].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

"The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; see *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

## B.

### *Violation of the CLRA*

The Laffertys contend their cause of action under the CLRA was not barred for failure to give the requisite notice to Wells Fargo. The argument is meritorious.

In demurring to the complaint, Wells Fargo argued: "The [CLRA] requires that a plaintiff who intends to assert a cause of action for damages under the CLRA provide the prospective defendants with notice of the alleged violations. The defendants then have 30 days in which to correct the alleged violations. Plaintiffs did not comply with the notice and cure requirements of the CLRA." Wells Fargo did not advance other grounds for the demurrer to the CLRA claim. The trial court sustained the demurrer as to the cause of action arising under the CLRA.

█ " 'The CLRA makes unlawful, in Civil Code section 1770, subdivision (a), . . . various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." ' (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639 [88 Cal.Rptr.3d 859, 200 P.3d 295].) It provides that any consumer who suffers damage as a result of an act or practice declared unlawful in the CLRA may seek to recover actual damages, punitive damages, or injunctive relief. (Civ. Code, § 1780.) █ However, the CLRA includes a prefiling notice requirement on actions seeking damages. At least 30 days before filing a claim for damages under the CLRA, 'the consumer must notify the prospective defendant of the alleged violations of [the CLRA] and "[d]emand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation" thereof. ([Civ. Code,] § 1782, subd. (a)(2).) If, within this 30-day period, the prospective defendant corrects the alleged wrongs, or indicates that it will make such corrections within a reasonable time, no cause of action for damages will lie. . . .' (*Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 590 [200 Cal.Rptr. 38, 676, P.2d 1060] . . . , disapproved on other grounds in *Meyer v. Sprint Spectrum L.P., supra*, 45 Cal.4th at p. 643, fn. 3.)" (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1259–1260 [99 Cal.Rptr.3d 768].)

The Laffertys assert the CLRA notice requirements were satisfied by their January 11, 2006, letter to Fleetwood—a letter described in and attached to their operative complaint. The January 11 letter informed Fleetwood that the Laffertys told Geweke about problems with the motor home after their first trip in November 2005. They explained the mechanical and electrical failures

were never remedied even though Geweke repeatedly assured them the problems would be fixed. In response to a request for admission, Wells Fargo acknowledged it too received the January 11 letter. Moreover, the Laffertys notified Wells Fargo directly on February 7, 2006, that they would stop making payments until the motor home was repaired. Wells Fargo also acknowledged receiving this letter.

■ The Laffertys' January 11 and February 7, 2006, letters sufficiently precede the filing of their complaint to satisfy the CLRA. Moreover, even if the historical fact of notice to Wells Fargo were an issue, it would not have rendered the complaint defective *as a matter of law* for purposes of demurrer. As this court has previously held, " 'demurrer tests the pleading alone *and not the evidence or other extrinsic matters which do not appear on the face of the pleading* or cannot be properly inferred from the factual allegations of the complaint. . . .' (*Executive Landscape Corp.* v. *San Vicente Country Villas IV Assn.* (1983) 145 Cal.App.3d 496, 499 [193 Cal.Rptr. 377].)" (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 864 [255 Cal.Rptr. 232], italics added.)

Here, the face of the pleading describes how the Laffertys complied with the CLRA notice requirement. If their notice was deficient, demurrer is not the procedural vehicle for proving that fact. (*Bach v. McNelis, supra*, 207 Cal.App.3d at p. 864.) Accordingly, the trial court erred in sustaining the demurrer as to the cause of action arising under the CLRA.

## C.

### *Negligence*

The Laffertys next argue the trial court erred by sustaining the demurrer to their cause of action for negligence. We agree.

The Laffertys' operative complaint alleged (as its eighth cause of action) negligence on grounds that defendants "owed a duty to [the Laffertys] to diligently, competently and timely complete repairs to the motor home in a workmanlike manner, and failed to do so." The Laffertys further alleged they "notified defendants Fleetwood, Geweke and Wells Fargo of their breach of warranty in January 2005 [*sic:* 2006]. They notified defendants again on April 25, 2006 that they had elected to return the motor home. [Citation.] The defendants and each of them, have refused to accept return of the motor home and to act accordingly in conformity to law." As to Wells Fargo, the Laffertys also alleged Wells Fargo "falsely reported to various credit rating agencies that [they] had defaulted in their obligation, and failed to report that payment of the amounts that Wells Fargo claimed were due, were in fact legitimately disputed in relation to a breach of warranty." Thus, alleged the Laffertys,

Wells Fargo "violated its fiduciary relationship with and breached its duty of care to [them] by failing to correctly ascertain the status of their payments, by falsely reporting to various credit reporting agencies the status of their account, and by knowingly and/or negligently reporting false and incorrect credit information."

In response, Wells Fargo sought dismissal of this cause of action for negligence by contending it "is preempted by the Federal Fair Credit Reporting Act." More specifically, Wells Fargo argued, "the Federal Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*) preempts all common law causes of action based on alleged injury *arising from the reporting of credit information* by a furnisher of credit." Wells Fargo offered no other basis for the demurrer to the eighth cause of action.

Both Wells Fargo's argument and the trial court's order sustaining the demurrer to the eighth cause of action for negligence seem to have mistaken the claim for *negligence* for the *negligent defamation of credit* claim in the 11th cause of action. The gravamen of the negligence cause of action was the failure to repair the motor home, not the derogatory remarks made on the Laffertys' credit history.

The federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) (FCRA) concerns only issues related to credit reporting. (*Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 763 [88 Cal.Rptr.3d 673] (*Sanai*); see *Jones v. Federated Financial Reserve Corp.* (6th Cir. 1998) 144 F.3d 961, 965 [noting purpose of FCRA is " 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information' "].)

We conclude the trial court erred when it dismissed the cause of action for negligence based on a ground applicable only to the separate cause of action for negligent credit defamation.

### D.

### *Negligent Credit Defamation*

The Laffertys contend the trial court erred in concluding federal law preempted their 11th cause of action for negligent credit defamation. We disagree.

The Laffertys' operative complaint alleged in the 11th cause of action: "After the plaintiffs notified the defendants of their breach and revoked

acceptance of the motor home, they correctly exercised their right to suspend payment of the monthly amount specified by the installment purchase agreement. Defendant Wells Fargo then, in late 2006 or early 2007, falsely reported to various credit rating agencies that the plaintiffs had defaulted in their obligations, failing to report that payment of the amounts which Wells Fargo claimed were due, were in fact legitimately disputed in relation to a breach of warranty."

■ The FCRA, in "15 United States Code section 1681t(b)(1)(F) totally preempts all state common law tort claims against furnishers of credit information arising from conduct regulated by 15 United States Code section 1681s-2 . . . ." (*Sanai, supra*, 170 Cal.App.4th at p. 773.) *Sanai* explains that "in 1996 Congress amended the FCRA to strictly limit the availability of consumer's state remedies against furnishers of credit information. As amended, 15 United States Code section 1681t(b) provides, 'No requirement or prohibition may be imposed under the laws of any State—[¶] (1) with respect to any subject matter regulated under—[¶] . . . [¶] (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply— [¶] (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); [¶] (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on the date of enactment (September 30, 1996)[)] . . . .' [¶] . . . [¶] The United States Supreme Court in [*Riegel v.*] *Medtronic, [Inc.* (2008)] 552 U.S. [312, 324] [169 L.Ed.2d 892, 128 S.Ct. 999], held, '[a]bsent other indication, reference to a State's "requirements" includes its common-law duties.' There is nothing in the present case to contradict this normal meaning. Accordingly, 15 United States Code section 1681t(b)(1)(F) totally preempts all state common law tort claims against furnishers of credit information arising from conduct regulated by 15 United States Code section 1681s-2, including . . . common law tort claims against [defendants who made reports to credit rating agencies]. (See *Roybal v. Equifax* (E.D.Cal. 2005) 405 F.Supp.2d 1177, 1181 [the FCRA precludes all 'common law causes of action that would impose any "requirement or prohibition" on the furnishers of credit information']; *Hasvold v. First USA Bank, N.A.* (D.Wyo. 2002) 194 F.Supp.2d 1228, 1239 [dismissing as preempted state common law claims for libel, interference with prospective advantage and invasion of privacy; ' "[t]he plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting" ']; *Riley v. General Motors Acceptance Corp.* (S.D.Ala. 2002) 226 F.Supp.2d 1316, 1323 [dismissing as preempted state law claims for defamation, invasion of privacy and negligence].)" (*Sanai, supra*, 170 Cal.App.4th at pp. 773–774, fn. omitted.)

The Laffertys argue the negligent credit defamation cause of action is not preempted by the FCRA because (1) their claim has nothing to do with credit reporting, (2) the California Supreme Court has not decided whether the FCRA has preempted California law, and (3) *Sanai, supra,* 170 Cal.App.4th 746, is somehow not yet final because the result in that case involved a remand to the trial court.

We dispose of the first contention by observing the Laffertys' own characterization of the claim as based on the fact "Wells Fargo Bank decided to tell the town that the Laffertys were deadbeats." This colorfully describes the Laffertys' allegation in their operative complaint that Wells Fargo "falsely reported to various credit rating agencies that the plaintiffs had defaulted in their obligations . . . ." Their cause of action regarding the reporting to credit agencies is precisely the sort of claim that is preempted by the FCRA. (*Sanai, supra,* 170 Cal.App.4th at pp. 773–774.)

That *Sanai* was decided by the Court of Appeal rather than the California Supreme Court does not undermine the validity of its holding. "Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) In *Auto Equity Sales,* the California Supreme Court carved out no exception for the binding authority of a published Court of Appeal decision simply because the disposition involved remand to the trial court. (See *ibid.*) The Laffertys offer no authority to the contrary.

The trial court correctly concluded the FCRA preempts the Laffertys' 11th cause of action for negligent credit defamation.

### E.

### *Declaratory and Injunctive Relief*

The Laffertys contend the trial court erred in sustaining the demurrer to their cause of action for declaratory and injunctive relief. We disagree.

The Laffertys sought declaratory and injunctive relief on grounds they were third party beneficiaries of the dealer agreement between Geweke and Wells Fargo. We reject this characterization of the dealer agreement as being made specifically to benefit the Laffertys.

The purpose of the dealer agreement was to assign the installment contract from Geweke to Wells Fargo. Thus, Geweke made warranties under the dealer agreement that favored Wells Fargo—not the Laffertys. In particular, Geweke promised that the Laffertys "have no defense, offset, claim or counterclaim regarding the enforcement of the [sales] Contract which arises out of, is related to, or is in connection with the conduct or representations of Dealer [Geweke], its employees or agents . . . ." Moreover, Geweke promised to defend Wells Fargo against any legal action arising out of the sale of the motor home. Finally, the dealer agreement signaled Wells Fargo as the true beneficiary of the agreement by declaring, "[n]o failure or delay *by Bank* [*Wells Fargo*] either to exercise any right or remedy it may have, or to require the existence of any condition or the performance of any obligation of Dealer [Geweke] hereunder, shall operate as a waiver thereof . . . ."

 Because the dealer agreement was not made for the benefit of the Laffertys, they lack standing to seek declaratory and injunctive relief under that agreement. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 54 [58 Cal.Rptr.3d 225] [holding party lacks standing to seek declaratory relief under a contract to which plaintiff is not a party or third party beneficiary].) Accordingly, the trial court properly dismissed the Laffertys' cause of action for declaratory and injunctive relief under the dealer agreement.

## III

### *Causes of Action Dismissed by Summary Adjudication*

The Laffertys contend the trial court erroneously granted Wells Fargo's motion for summary adjudication of their causes of action for breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Song-Beverly Act, violation of the Tanner Consumer Protection Act, and unfair business practices. As we explain, the Laffertys have forfeited these contentions on appeal.

### A.

### *Order Granting Summary Adjudication*

The trial court granted summary adjudication in part based on its conclusion the Laffertys failed to introduce competent evidence to support their assertions of triable issues of fact. Specifically, the court found the Laffertys could not rely on their own responses to interrogatories or the moving party's points and authorities to create triable issues of fact. Thus, the trial court

sustained all of Wells Fargo's objections to the Laffertys' evidence. The court also overruled all of the Laffertys' objections to Wells Fargo's evidence. These evidentiary rulings essentially left the Laffertys' case bereft of evidence.

In granting summary adjudication, the trial court also found separate grounds for dismissing each of the six remaining causes of action. The court concluded Geweke's warranty obligations were not assigned to Wells Fargo in the dealer contract; Wells Fargo did not breach any contractual obligation to which it had agreed; neither the Song-Beverly Act nor the Tanner Consumer Protection Act applied to Wells Fargo; and the dealer agreement was not unenforceable or violative of public policy.

## B.

### *Forfeiture*

In challenging the trial court's order on summary adjudication, the Laffertys argue Wells Fargo did not introduce evidence sufficient to shift the burden to them to show triable issues of material fact. The Laffertys contend they presented the only competent evidence relating to the summary adjudication. Finally, they assert the trial court erroneously overruled their objections to Wells Fargo's evidence.

Conspicuously absent from the opening brief's discussion of summary adjudication is any argument pertaining to the trial court's reasons for dismissing their causes of action apart from the evidentiary rulings. The causes of action dismissed by the court are mentioned by the Laffertys only in noting the trial court found they lacked competent evidence to establish any of their remaining causes of action.

Even if we assume the Laffertys' arguments regarding the trial court's evidentiary rulings are meritorious, we would nonetheless be compelled to affirm the order granting summary adjudication. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

Here, the Laffertys have failed to address how the trial court erred in concluding legal grounds separate from the evidentiary issues supported summary adjudication. "When a point is asserted without argument and

authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647 [199 Cal.Rptr. 72]; accord, *Berger v. Godden* [(1985)] 163 Cal.App.3d [1113,] 1117 [210 Cal.Rptr. 109] ['failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error'].)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 [41 Cal.Rptr.3d 453].) Consequently, we deem the contention that the trial court erred in granting summary adjudication to be forfeited for failure to present arguments as to the separate grounds for dismissing the Laffertys' six remaining causes of action.

## IV

### *Attorney Fees*

Finally, the Laffertys contend the trial court's award of attorney fees to Wells Fargo as the prevailing party must be reversed. We agree.

The order awarding attorney fees and costs to Wells Fargo was based on its status as the prevailing party pursuant to a judgment that has now been reversed. Our reversal of the judgment due to the erroneous dismissal of two causes of action means Wells Fargo is no longer necessarily the prevailing party. Accordingly, we reverse the order awarding Wells Fargo its attorney fees and costs.[6] (See *Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 620 [98 Cal.Rptr.3d 231] ["In light of our conclusion that the judgment must be reversed . . . , it no longer can be said that defendants are the prevailing parties. Accordingly, we must reverse the award of [attorney] fees and costs [to defendants], and thus need not address [plaintiffs'] contention that the award was erroneous . . . ."].)

## DISPOSITION

The judgment is reversed insofar as the trial court (1) sustained the demurrer to Patrick and Mary Lafferty's causes of action for negligence and under the Consumer Legal Remedies Act (Civ. Code, § 1770 et seq.) and (2) awarded attorney fees to Wells Fargo Bank. On remand, Patrick and Mary Lafferty may proceed to trial on these two causes of action against Wells Fargo Bank that the Laffertys would otherwise have had only against Geweke

---

[6] In reversing the award of attorney fees, we decline to address the Laffertys' contention that the Song-Beverly Act precludes an award of attorney fees against the purchaser of the vehicle from which the litigation arose. As we conclude in part III, above, the Laffertys forfeited the claims that their causes of action were erroneously dismissed by summary adjudication—including the Song-Beverly Act claim.

Auto & RV Group but for the Holder Rule, title 16, section 433.2, of the Code of Federal Regulations. Patrick and Mary Lafferty shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3) & (5).)

Robie, Acting P. J., and Duarte, J., concurred.

Petitions for a rehearing were denied February 27, 2013, and the opinion was modified to read as printed above.