Filed 7/24/13  In re H.K. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re H.K., a Person Coming Under the Juvenile Court Law. | B244308 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK88303) |
| Plaintiff and Respondent, | |
| v. | |
| S.K., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Donna Levin, Referee.  Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

This appeal stems from S.K.'s (Father) challenges to the juvenile court's custody and visitation orders regarding his daughter, H.K. Father contends that the juvenile court erred when it summarily denied his Welfare and Institutions Code section 388 petition.[1] Father also contends the court erred when it terminated jurisdiction and granted sole custody to J.K. (Mother). We affirm.

## FACTS

H.K. was born in 2010. Mother lived in India prior to her arranged marriage to Father in 2009 and only speaks Punjabi. A restraining order was issued against Father and it was ordered that he have no visitation with H.K. in 2011.

As a result, the Los Angeles County Department of Child and Family Services (Department) received an emergency referral about the family. At the initial interview, Mother described two years of severe domestic violence by Father, including repeated rape of Mother in H.K.'s presence, false imprisonment and verbal, emotional and physical abuse by Father. Father took her cell phone away and refused to allow her to speak to her family. Father's family, with whom they were living, either ignored the abuse or participated in it. Mother also reported that Father smoked opium and drank alcohol. She had previously attempted to report the abuse with no success and was afraid of the repercussions of trying anything more.

The Department's investigation revealed that Father had a previous arrest in 2008 for making terrorists threats against a neighbor. (Pen. Code, § 422.) The police were also called in 2005 after Father had a fight with his brother. The officers noted that Father kicked a hole in a bedroom door and broke both side rearview mirrors of his brother's car.

Mother told the police and the Department that during the night of April 15, 2011, Father hit her, choked her and threatened to kill her and H.K. Father also picked up H.K. and began to shake her. When Mother tried to intervene, Father kicked her and threw her

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise specified.

on top of the baby. He then hit her repeatedly while H.K. was underneath them. Mother ran outside and screamed for help because H.K. stopped screaming and mother thought she was not breathing. Mother was able to call her mother in India, who called local law enforcement. When the officers from the Westminster Police Department arrived, Father and paternal grandmother tried to tell them everything was fine, but Mother began to scream. The police took Mother and H.K. to the hospital, where Mother's sister came to pick them up.

The police report showed that Mother had bruising to her right knuckle and index finger, left wrist, and had red scratch marks on her right shoulder. She also had marks on her left tricep and bicep consistent with a "grabbing injury." Mother also complained of pain in her neck, head and shoulder. H.K. was observed to have bruises on her back, a large bruise on her shoulder and lower back, and several small bruises along her spine, also "consistent with a grabbing injury." Father denied any physical altercation occurred when interviewed by the police and claimed that Mother's family was conspiring to interfere with his marriage.

H.K. was declared a dependent of the juvenile court under subdivisions (a) and (b) of section 300 on September 15, 2011.[2] The allegations regarding Father's violence against Mother and H.K. on April 15, 2011, were sustained by the juvenile court. H.K. was released to Mother, who moved to an undisclosed location in Los Angeles County. Father was initially prohibited from visiting with H.K., but was subsequently permitted twice-monthly supervised visitation at the Department's offices when he submitted a modified restraining order showing the criminal court allowed it. Father was granted reunification services and ordered to participate in counseling and domestic violence classes.

Father continued to deny the sustained allegations and asked "when the Department will realize that mother is telling lies." A risk assessment conducted by the Department in its March 15, 2012 status review report indicated that the risk was high if

---

[2] Father appealed from the jurisdictional and dispositional findings in case number B236077. His appeal was dismissed as abandoned by order dated March 19, 2012.

3

H.K. were returned to Father's care "as Father has no insight into the family problems." As a result, the Department recommended that custody remain with Mother and Father continue to have monitored visits.

On September 12, 2012, Father submitted a request to change the juvenile court's custody and visitation orders under section 388. He requested joint custody of H.K. or, in the alternative, unmonitored visits. Father also requested that the juvenile court order Mother not to leave the country because she requested a passport for H.K. without his permission and maternal grandmother had tried to persuade her to leave the country. The juvenile court summarily denied Father's section 388 petition without a hearing on September 14, 2012, indicating that his request did not state a change of circumstances nor promote the best interests of H.K. The court noted that it had nothing to show that the modified restraining order issued on December 2011 had been dismissed. Father appealed from the juvenile court's order the same day.

Father next requested a contested section 364 hearing to be permitted liberalized visitation. The contested hearing was held on October 29, 2012. After receiving two of the Department's status reports into evidence and hearing argument from counsel, the juvenile court terminated jurisdiction, granted Mother sole custody and ordered monitored visitation with Father twice per month. Father appealed the same day. We consolidated Father's previous appeal from the section 388 petition on December 20, 2012.

## DISCUSSION

**I.    Summary Denial of the Section 388 Petition Was Proper**

Father contends that the juvenile court erred when it summarily denied his section 388 petition without an evidentiary hearing since he demonstrated both changed circumstances and that H.K. would benefit from the proposed modification. We disagree.

Section 388 allows a juvenile court to change, modify or set aside any prior order upon petition by an interested party. (§ 388, subds. (a), (d).) The party seeking modification must "make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310; *In re Jeremy W.*

4

(1992) 3 Cal.App.4th 1407, 1412-1414.) There are two parts to the prima facie showing: the party must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.) The court must liberally construe the allegations of the petition. If the allegations do not show changed circumstances such that the child's best interests will be promoted by the proposed change, the juvenile court need not order a hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) We review the summary denial of Father's section 388 petition for abuse of discretion. (*In re Jeremy W.*, *supra,* 3 Cal.App.4th at p. 1413.)

In support of his section 388 petition, Father submitted the minutes from his criminal case showing that counts 1, 2, and 3 against him were dismissed by motion of the People and that the protective order dated April 19, 2011 was terminated. He submitted ten clean, consecutive drug tests and asserted that "I can see where I went wrong and am incorporating new, healthier behaviors into my repertoire." He also attached progress reports from his respective court-ordered programs and stated that he was "doing everything [he was] supposed to be doing." A report dated August 7, 2012 from the batterers' intervention program indicated that Father was "making good effort" at accepting responsibility for violence, demonstrating a respectful, considerate and non-controlling attitude, developing positive conflict resolution skills, using self-control techniques and being motivated to improve his relationship skills. Father was rated five out of seven in these categories. Also, Father asserted that the requested change would benefit H.K. because she "needs her father in her life. She responds favorably to [Father] during visits and leans up against [Father], likes to be close to [Father]."

The Department's status review report on September 14, 2012, showed Father had attended 40 domestic violence and parent education sessions, as well as six sessions of individual counseling. However, he had only one visit with H.K. in April and May 2012 due to his work schedule. The Department recommended that the juvenile court terminate jurisdiction and grant Mother sole custody of H.K. It also recommended future visits with Father be monitored and occur in a therapeutic setting.

5

At the hearing, the juvenile court observed that there was no indication the December 2011 restraining order prohibiting contact with Mother but allowing visitation with H.K. was terminated. Instead, the court noted it was valid until 2014. The court summarily denied the section 388 petition.

We find Father failed to make the prima facie showing necessary to obtain a hearing. His petition does not demonstrate a genuine change of circumstance. The minutes from the criminal court attached to Father's section 388 petition showed only that the initial protective order, issued on April 19, 2011, was terminated. It made no mention of the protective order issued on December 12, 2011, which was not set to expire until 2014.[3] Further, Father's progress in the batterer's intervention program was not as significant as he would like to believe. He was rated five out of seven, indicating that he was making a good effort. However, a good effort is not the same as a true and lasting change in the behaviors that led to the extreme domestic violence against H.K. and Mother.

Father also made no showing in his petition that it would be in H.K.'s best interest to grant him unmonitored visitation, much less custody. Father's statement that H.K. needs him in her life is a generalized statement that is not supported by any evidence in the record.[4] That H.K. may respond favorably to Father during visitation is a sign of progress. But it does not show that H.K. has a strong bond with Father. Neither does it support a finding that it is in her best interest to allow unmonitored visitation, particularly

---

[3] On our own motion, we take judicial notice of the Orange County criminal court's September 18, 2012 order terminating the December 12, 2011 protective order. This order was issued four days after the trial court hearing on Father's section 388 petition. The termination of the protective order, however, does not change our analysis that it would not be in H.K.'s interest to permit Father joint custody or unmonitored visitation.

[4] In his opening brief, Father cites to an article entitled "The Importance of Fathers in the Healthy Development of Children" to support his argument that it is in H.K.'s best interests to grant his section 388 petition. This was not before the juvenile court and will not be considered on appeal. (Cal. Rules of Court, rule 8.204 (a)(2)(C); *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 453.)

given her age and Father's history of violence against her. Even if Father's 10 clean drug tests and progress toward completion of his court-ordered programs constituted new circumstances, they do not, by themselves, support a finding that H.K.'s interests would be served by granting Father custody or unmonitored visits. Likewise, the fact that the felony counts against Father were dismissed does not demonstrate a change in visitation or custody would be in H.K.'s best interests. The juvenile court sustained the allegations regarding Father's abuse. The dismissal of the criminal case against Father does not negate those findings.

## II. The Juvenile Court Did Not Abuse its Discretion When it Terminated Jurisdiction and Granted Custody to Mother

Father also contends the trial court erred by terminating jurisdiction with a family law custody order giving mother sole custody. We find otherwise.

Father first claims the court erred by failing to make findings pursuant to section 364 supporting its decision. We note that Father failed to request the juvenile court to make those findings and has thus forfeited the issue. (*In re Anthony P.* (1995) 39 Cal.App.4th 635, 641-642.) Even so, no express findings are required by statute and the court did not err. The relevant statute, subdivision (c) of section 364 provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." Section 364 does not require that express findings be made on the record in order to terminate jurisdiction, and Father presents no authority holding otherwise.

7

Father also contends the court improperly granted sole custody of H.K to Mother because the order was based on incomplete information given that the juvenile court erroneously refused to allow an evidentiary hearing on Father's section 388 petition.[5] This argument lacks merit. As discussed above, we conclude there was no error in the juvenile court's summary denial of the section 388 petition. In any event, Father fails to identify what information was "incomplete" and should have been, but was not, before the juvenile court.

Last, Father contends the juvenile court's order granting Mother sole custody of H.K. was not supported by substantial evidence and there was no basis to deny his request for joint custody. According to Father, Mother is not supportive of Father's contact with H.K. and may abscond with her since the juvenile court permitted her to obtain a passport for H.K. without Father's consent. Father contends he should be granted joint custody because the protective order against him had been terminated and he was making good progress in counseling and other programs.

We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody order for abuse of discretion. (*In re A.J.* (2013) 214 Cal.App.4th 525, 535.) Under this standard, we may not disturb the order unless the court " ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) The juvenile court's factual findings are reviewed for substantial evidence. (*In re A.J., supra,* at p. 535, fn. 7.) When making a custody determination in any dependency case, the juvenile court's focus and primary consideration must always be the best interests of the child. (*Ibid.; In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

---

[5] Mother and Father's divorce proceedings are in family court. However, "[w]hen a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. (§§ 364, subd. (c), 362.4; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.) Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.)

Furthermore, the court is not restrained by " 'any preferences or presumptions.' " (*Chantal S., supra,* at p. 206.)

Here, the juvenile court properly based its custody decision on the best interests of H.K. It found it was in the best interest of H.K. to grant Mother sole custody because Mother was able to provide H.K. with a safe and nurturing environment. This conclusion is supported by the record. The evidence shows that Mother has a good relationship with H.K. and has made necessary strides to provide for her. The Department reported that H.K. "seems very comfortable in the presence of mother at their home" and "is very bonded to her mother[.]" Moreover, "Mother has accomplished major goals such as learning how to speak English, getting job training, working longer hours, and ensuring appropriate child care for [H.K.]. Mother also met the basic needs for herself and [H.K.] without the Department's intervention or support." The Department concluded that H.K. was safe with Mother. As a result, the Department recommended that custody be granted to Mother and jurisdiction terminated. It was not an abuse of discretion for the juvenile court to accept the Department's conclusions. Given the extreme physical, mental and emotional abuse committed by Father against Mother, it is unlikely that H.K. would benefit from a co-parenting arrangement if Father were granted joint legal custody.

In any event, the court acknowledged H.K.'s interest in continuing to have a relationship with Father by granting visitation. To the extent Father challenges the court's order for monitored visitation, we conclude it was not an abuse of discretion in light of H.K.'s age and Father's history of violence.

## DISPOSITION

The challenged orders are affirmed.


BIGELOW, P. J.

We concur:


FLIER, J.          GRIMES, J.

9