Filed 10/9/25  Thompson v. Ning CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CARL THOMPSON, | |
| Appellant, | E084072 |
| v. | (Super.Ct.No. FLRI2306162) |
| ZHONG MIN NING, | OPINION |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  Natalie Lough, Judge.  Affirmed.

Holstrom, Block & Parke and Ronald B. Funk for Appellant.

Quinn & Dworakowski, David Dworakowski, and Erin K. Noonan for Respondent.

Family Code section 7611, subdivision (d) (§ 7611(d)) provides that "[a] person is presumed to be the natural parent of a child if the person" "receive[d] the child into their home and openly holds out the child as their natural child."  (Unlabeled statutory

1

references are to the Family Code.) Carl Thompson petitioned the trial court to find him to be a presumed father under section 7611(d) of respondent Zhong Min Ning's minor daughter. Ning moved to quash the summons and proceedings. The trial court granted Ning's motion and denied Thompson's petition. Thompson appeals from both orders. We affirm.

BACKGROUND

In September 2023, Thompson filed a petition to be found the presumed father of Ning's daughter, Eden N., who was born in March 2016. He also moved for visitation or joint legal and physical custody of Eden.[1]

In an attached declaration, Thompson stated that he met Ning in 2010, when he rented a room in her home. Thompson said that they briefly dated and that he continued to live in Ning's home after the romantic relationship ended. According to Thompson, Ning adopted Eden in 2016. Thompson attested that he "immediately created a paternal bond with Eden and took the role of her father" and that he "held [himself] out as her father and introduced [himself] to others as her dad." He described in detail how he was involved in Eden's life when she was an infant and a toddler until he moved out of the residence in March 2020. Thompson claimed that he was very active in Eden's school life in 2019, attending school events and field trips as an approved chaperone. He also stated that a neighbor called Thompson "'a good dad,'" and Eden's school friends

---

[1] In Judicial Council Form FL-200, Thompson requested only that he be awarded visitation and that Ning be awarded sole legal and physical custody, but in a supporting declaration he stated that he was requesting joint legal and physical custody of Eden.

2

referred to him as Eden's dad. Thompson claimed that since moving out of the residence in March 2020, he "continued to communicate with [Ning] and Eden."

In October 2023, Ning moved to quash service of the summons and also moved to quash the proceeding under California Rules of Court, rule 5.63(b)(1), which allows a respondent to quash a proceeding on the basis of petitioner's "[l]ack of legal capacity to sue." (Unlabeled rule references are to the California Rules of Court.) In a supporting memorandum of points and authorities, Ning argued that Thompson did not meet the requirements to be a presumed father under section 7611 and therefore lacked legal capacity and standing. Ning also argued that Thompson lacked standing to sue for parental rights to Eden because another man, Zuo Tao Wang aka David Wang, was listed as Eden's father on her birth certificate, and there was a judgment of parentage issued before Eden was born declaring Wang and Ning to be Eden's parents. In addition, Ning argued that the court should grant the motion to quash because she and Eden lived in Texas, so the court lacked personal jurisdiction.

In a supporting declaration, Ning attested that she started preparing to move to Texas in early 2023 and actually moved in late June 2023. Ning explained that Wang is Eden's biological father and is listed on Eden's birth certificate, which Ning attached to her declaration. Ning and Wang were married from 1984 to 2001 and remained close after their divorce. In 2016, they decided to conceive a child together via a surrogate, with Wang's sperm and donated eggs. Before Eden was born, Wang and Ning received a judgment of parentage from the Orange County Superior Court declaring them to be the

3

sole legal parents of the surrogate's unborn child effective immediately upon the child's birth. The judgment is attached to Ning's declaration. The court ordered that Wang and Ning be listed as the child's parents on her birth certificate, and they are. Ning described in detail how Wang assisted her in raising Eden by providing financial support and by frequently spending time with Eden. Immediately after Eden was born, Ning hired a maternity caretaker, who moved into the residence to assist Ning in caring for Eden. In addition, a live-in nanny helped Ning care for Eden until the fall of 2017.

Ning denied that she ever had a romantic relationship with Thompson. She attested that when Eden was born in 2016 Thompson was a tenant who rented a room in Ning's residence. Ning disputed Thompson's account of his relationship with Eden. Ning said that Thompson rarely interacted with her or with Eden when Eden was an infant, but in 2017 she agreed to allow him to rent a larger room in her residence for the same price as the smaller room if he assisted with various chores, including babysitting Eden and providing transportation. In 2019, Thompson lost his job and assisted with taking Eden to preschool during a three-month period. Ning attested that if Thompson "ever held himself out to others as Eden's father, it was without [her] knowledge or consent." In December 2019, Ning sent Thompson a letter notifying him that she was terminating his month-to-month lease and that he had two months to move out of her home. Ning stated that Thompson did not have any physical contact with Eden after he moved out.

Thompson filed a responsive declaration to Ning's motion to quash, but the file-stamped declaration is not signed.

In April 2024, the court held a hearing on both Ning's motion to quash and Thompson's petition to determine a parental relationship. The minute orders from the hearing indicate that no court reporter was present. According to the minute orders, both parties were sworn in and represented by counsel at the hearing. Both minute orders read: "Issues discussed with the Court." With respect to the motion to quash, the minute order relates that the court read and considered Ning's motion to quash and granted the motion, but the minute order does not state the basis for the ruling. As to Thompson's petition to determine a parental relationship, the minute order provides that the court found that Thompson did not have standing under section 7636, so it denied Thompson's request to be determined to be Eden's presumed father.

DISCUSSION

I.      *General principles of appellate law*

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant bears the burden of demonstrating, "on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).) Reversal is not warranted by "error alone." (*In re Marriage of Falcone &*

5

*Fyke* (2008) 164 Cal.App.4th 814, 822 (*Falcone*).) Rather, the appellant bears the burden of demonstrating that "'the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.'" (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) "A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.'" (*Falcone*, at p. 823.) In addition, it is the appellant's burden to provide an adequate record on appeal. (*Jameson*, at p. 609.) The failure to provide an adequate record on an issue requires that the issue be resolved against the appellant. (*Ibid.*)

II.     *Evidentiary hearing*

Thompson contends that the trial court committed reversible error by "quashing [his] parentage petition without a hearing" under section 217 and by not stating on the record that it found good cause to refuse live testimony. (Capitalization & boldfacing omitted.) The argument is forfeited by Thompson's failure to provide an adequate record on appeal.

Section 217 provides that in family law proceedings "the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties" unless the parties stipulate otherwise or the court makes a finding of good cause to refuse to receive live testimony. (§ 217, subd. (a).) If the court makes such a finding, the court "shall state its reasons for the finding on the record or in writing." (*Id.*, subd. (b); see also rule 5.113(c) ["If the court makes a finding

6

of good cause to exclude live testimony, it must state its reasons on the record or in writing"].)

The record on appeal does not include a reporter's transcript of the hearing, an agreed statement, or a settled statement. (Rules 8.130, 8.134, 8.137.) It consequently is not possible to discern what happened during the proceeding, including whether the parties stipulated to proceed without live testimony. (§ 217, subd. (a).) "[S]ection 217 does not mandate live testimony when the parties indicate their desire to rely solely on declarations." (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127.) In addition, absent any record indicating what happened during the proceeding, it is not possible to determine whether the trial court indicated that it was going to rely on the submitted declarations alone without objection by either party, resulting in forfeiture of the argument on appeal. (*Id.* at pp. 1127, 1131.) By not including a reporter's transcript of the hearing or a suitable substitute, Thompson has failed to carry his burden of providing an adequate record to facilitate review of the issue. (*Jameson*, *supra*, 5 Cal.5th at p. 609.) We accordingly resolve the issue against him. (*Ibid.*)

Thompson argues that the record on appeal is adequate without the reporter's transcript because the trial court ruled on the pleadings without any testimony. The argument lacks merit. Regardless of whether the trial court received testimony, a record of the proceeding is necessary to evaluate the claim that the court erred by failing to hold an evidentiary hearing under section 217. Without a reporter's transcript of the hearing or an appropriate substitute, we cannot evaluate whether there was any error, let alone

7

whether Thompson preserved the claim by raising it in the trial court. (Cf. *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 213.)

III.    *Motion to quash*

Thompson contends that the trial court erred by granting Ning's motion to quash under rule 5.63(b)(1), because the court conflated the issues of standing and legal capacity. The argument fails because Thompson cannot show prejudice.

The respondent in a family law proceeding may move to quash service of the summons on the ground of lack of personal jurisdiction. (Code Civ. Proc., § 418.10; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 4:96.) In addition, rule 5.63(b)(1) provides that the respondent may move to quash the proceeding within a specified period on the grounds of "[l]ack of legal capacity to sue."

Ning's motion sought both to quash the proceeding under rule 5.63(b)(1) and to quash service of the summons based on lack of personal jurisdiction. The motion was thus based on two independent potentially dispositive theories. The minute order from the hearing on the motion states only that the court granted the motion. It does not specify the basis on which the court ruled. We cannot ascertain the basis of the trial court's ruling, because the record on appeal contains no record of the oral proceedings. We presume the correctness of the trial court's order granting the motion to quash. (*Arceneaux*, *supra*, 51 Cal.3d at p. 1133.)

8

In order to prevail on appeal, Thompson must demonstrate both that the trial court erred and that the error was prejudicial. (*Falcone*, *supra*, 164 Cal.App.4th at p. 822.) Because Ning's motion to quash was based on two independent, alternative theories and the record does not identify the basis of the trial court's ruling, Thompson cannot demonstrate that he was prejudiced by the putative error in quashing the proceeding under rule 5.63(b)(1) without also showing that the trial court erred by quashing the service of the summons based on lack of personal jurisdiction. However, Thompson only challenges the trial court's order on the ground that the trial court erred by granting the motion under rule 5.63(b)(1). Because the record on appeal does not contain a reporter's transcript or suitable substitute from which we can determine the basis of the trial court's ruling, it is possible that the trial court granted the motion on the independently sufficient alternative grounds. Thompson's failure to address the independent basis on which the trial court may have granted the motion, combined with his failure to provide a record that identifies the basis for the court's ruling, makes it impossible for him to show that he was prejudiced by any error concerning rule 5.63(b)(1). (*Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 133; *Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 571-572.)

For these reasons, we reject Thompson's challenge to the order granting Ning's motion to quash.

9

## DISPOSITION

The April 10, 2024, orders granting Ning's motion to quash and denying Thompson's petition to determine a parental relationship are affirmed.  Ning shall recover her costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

CODRINGTON

  Acting P. J.

FIELDS

  J.